FREDERICK W. BROWN vs. CHARLES T. RUSSELL, JR.
& others.

Suffolk.    November 12, 1895. — April 25, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP,
& BARKER, JJ.

*Veterans' Preference Act — Civil Service Commissioners — Constitutional Law.*

The provisions of St. 1895, c. 501, §§ 2 and 6, so far as they purport absolutely
to give to veterans particular and exclusive privileges distinct from those of
the community in obtaining public office, are unconstitutional; but whether a
distinction can be made between public offices and employments by the public
which are not offices, *quære*.

PETITION, filed July 22, 1895, for a writ of mandamus, to
Charles Theodore Russell, Jr., Arthur Lord, and Edward P.
Wilbur, Civil Service Commissioners of Massachusetts, praying
that they be required to restore the petitioner to the highest
place upon the list of candidates eligible for certification and
appointment to a position on the detective force of the district
police of the Commonwealth, a preference for certification and
appointment having been given to one Edward D. Bean, con-
formably to the provisions of St. 1895, c. 501. Hearing before
*Allen*, J., who, at the request of the petitioner, and with the
consent of the respondents, reserved the case for the determina-
tion of the full court. The facts appear in the opinion.

The case was argued at the bar in November, 1895, and after-
wards was submitted on the briefs to all the judges.

*J. B. Warner & J. J. Feely*, for the petitioner.

*H. M. Knowlton*, Attorney General, (*G. C. Travis*, First As-
sistant Attorney General, with him,) for the respondents.

FIELD, C. J. In determining the principal question in this
case it is necessary to consider the statutes relating to the civil
service, and particularly St. 1895, c. 501. The previous statutes
on the subject are St. 1884, c. 320; St. 1887, c. 437; St. 1889,
c. 352; St. 1889, c. 473; St. 1891, c. 140; St. 1893, c. 95; St.
1893, c. 253; St. 1894, cc. 267, 519; and St. 1895, c. 376. The
justices of this court heretofore have had occasion to consider
some of these statutes in an opinion given to the House of Rep-
resentatives on February 24, 1885, and in one given to the Gov-
ernor and Council on September 22, 1887. See 138 Mass. 601;
145 Mass. 587.

By St. 1884, c. 320, § 2, the Civil Service Commissioners to be appointed under the act were authorized to prepare rules not inconsistent with existing laws or with the provisions of the act, and adapted to carry out the purposes thereof, for the selection of persons to fill certain offices in the government of the Commonwealth, and of the several cities thereof, which are required to be filled by appointment, and for the selection of persons to be. employed as laborers or otherwise in the service of the Commonwealth and of the several cities thereof, and the rules were made subject to the approval of the Governor and Council ; and by § 14 the rules were to be given a general or limited application. The commissioners have prepared rules with reference to what is called the official service of the Commonwealth, and of the several cities. thereof, and with reference to the labor service, and these rules have been approved by the Governor and Council. Under the classification of the services made by the rules there are included in the first division, schedule A, clerks and other persons rendering service as copyists, etc., and in schedule B persons employed in the prison, police, and fire departments, and some other officers. The second division includes the labor service. Section 15 of the St. of 1884, as amended by the St. of 1893, c. 95, describes the offices which, under existing laws, cannot be made subject to the civil service rules. It is obvious that the civil service statutes and rules relate only to certain subordinate offices and employments which have been created by the Legislature. None of them is an office or employment of which the duties, tenure, or qualifications are prescribed by the Constitution.

In the present case the petitioner is not a veteran, and, after examination, was placed at the head of the list of candidates eligible for certification and appointment to a position on the detective force of the district police of the Commonwealth, and he remained at the head of the list until July, 1895, when the commissioners placed one Edward D. Bean at the head of the list, and reduced the petitioner to the second place. Bean had made application as a veteran, under St. 1895, c. 501, § 2, and, having been found to be a veteran, was without examination placed first upon the list; and, so far as appears, he is the only veteran on the list. The district police are appointed by the

Governor of the Commonwealth, and are subject to removal by the Governor. Pub. Sts. c. 103, § 1. If the Governor makes requisition upon the commissioners for a candidate for appointment to the office of a detective upon this police force, it is made the duty of the commissioners, by the St. of 1895, to certify the name of Edward D. Bean for appointment, and of the Governor to appoint him, if he appoints anybody. The Governor, perhaps, may refuse to appoint anybody, if he is of opinion that Bean is not qualified to perform the duties of a detective on this force ; or he may wait until more veterans than one are on the list of persons eligible to such an appointment, and make his selection from them ; or he may appoint Bean, and remove him if he finds him incompetent. But then, if Bean is continued on the list, and is the only veteran on it, or if his application is considered as exhausted by one certification and he makes a new application, the statutes, literally construed, make it the duty of the commissioners to put his name again at the head of the list for appointment, and on requisition by the Governor again to certify him for appointment, and so on, *toties quoties*, so long as he remains on the list.

It is to be noticed that the class of veterans, as defined by the statutes, is not a class which anybody can become qualified to enter by any services which he may perform, or by any attainments which he may acquire, but it is a class fixed and determined by services which were rendered a long time before any of the statutes were passed. It is also to be noticed that the fact of having been a veteran within the meaning of the statute in and of itself has little tendency to show that the applicant is specially qualified to perform the duties of many of the offices to which the civil service statutes and rules relate. The principal purpose of exempting veterans from submitting to an examination must be that veterans sometimes may be appointed to an office or employment who would be found on examination not qualified to perform the duties of the office or employment which they seek. One, and perhaps the chief, purpose of the exemption must be to reward veterans for their services in the war of the rebellion. The reward is not in the nature of a pension or payment of money, but of an office or employment, the salary or pay of which the veteran is to receive.

The provisions of the statutes exempting veterans are general in their nature, and relate to all the offices or employments that have been or may be included within the civil service rules. From the earliest times most nations have conferred honors and offices upon those who have rendered distinguished service to the State, particularly in war. These honors and offices have been conferred upon persons voluntarily selected, and pensions and rewards sometimes have been given to whole classes of persons, of which the statutes of the Commonwealth relating to the " Aid to soldiers and sailors and to their families," and the statutes of the United States relating to pensions, are well known examples ; but the statute of 1895 under consideration affords the first instance, so far as we know, in this Commonwealth, where the appointing power has been compelled to appoint persons of a certain class to office in preference to all other persons, whether they are or are not thought to be qualified for the office by the appointing power, or by some public officer or some impartial and disinterested board of officers or persons invested by law with the power and responsibility of determining the qualifications of the persons to be appointed.

The Legislature, in establishing offices not provided for by the Constitution, has often required that the persons or some of the persons to be appointed shall possess certain qualifications, or that some of them shall be women and some men, but in all cases, so far as we are aware, the qualifications required bear such a relation to the duties imposed that they tend to secure that kind and degree of knowledge, experience, and impartiality which are requisite for the satisfactory performance of the duties, and it is open to any person to acquire the qualifications required. When women are to be appointed, there is a satisfactory reason in the nature of the office or employment why this should be done. In every such case some discretion usually has been left to the appointing power in the selection of the particular persons to be appointed. The peculiarity of the civil service statutes and rules, if St. 1895, c. 501, §§ 2 and 6, be enforced, is that very little is left to the discretion of the appointing power in the selection of persons if there are veterans who wish to be appointed. The civil service commissioners, in making up the list and in certifying the persons to be appointed,

must proceed in a certain way designated by the statutes and the rules, and the appointments must be made, if at all, from the persons so certified. Before the passage of St. 1895, c. 501, it was in the discretion of the appointing power whether veterans who had been put upon any list without an examination, pursuant to St. 1887, c. 437, should or should not be certified for appointment by the commissioners, and it was also in the discretion of the appointing power whether, if such veterans were certified, they should be appointed. But if veterans make application under St. 1895, c. 501, § 2, they are to be preferred " for certification and appointment in preference to all other applicants not veterans, except women," and, as separate lists are made up for the different offices and employments, appointments from each list must be made from veterans, if any man is appointed, and if there are veterans on the list.

It ought, perhaps, to be considered whether it is intended that veterans who make application for employment in the public service under St. 1895, c. 501, §§ 2 and 6, shall not only file a petition in accordance with § 6, but shall also conform in their application to the requirements of the second section of Rule XII. of the civil service rules, pursuant to § 2 of the statute. We are of the opinion that it was the intention of the statute that the application under this statute of a veteran who does not wish to submit to an examination should be made in accordance with the requirements of both the second section of Rule XII. of the civil service rules, and § 6 of the statute.* See opinion in 145 Mass. 587.

---

* Sections 2 and 6 of St. 1895, c. 501, entitled " An Act relative to the preference of veterans for employment in the public service," are as follows :

" Section 2. Veterans who have made application for employment in the public service in accordance with the second section of rule twelve of the civil service rules shall be preferred for certification and appointment in preference to all other applicants not veterans, except women; provided, that the age limit now established by the civil service rules, with regard to appointments in the police and prison service and fire departments, may be applied to such appointments."

" Section 6. The word ' application,' as used in this act, shall be construed to mean a petition for employment, containing a sworn statement by the applicant that he is qualified to perform the duties of the position which

It may perhaps be doubted whether it is the intention of the statute of 1895 that, if a veteran makes application pursuant to § 2, his application shall be taken to be conclusively true, or that the commissioners may inquire into the truth of the statements contained in the application. St. 1891, c. 140, gives the commissioners ample power to make investigation in all cases requiring it, and the only question is what is the intention of the statute of 1895. The commissioners must of necessity inquire and determine whether an applicant is a veteran according to the meaning of this statute, otherwise he has no right to make the application under § 2. We have, however, found it unnecessary in the present case to determine whether the commissioners may also inquire into the truth of the statements made in the application, to the effect that he has not suffered loss of limb or other physical impairment which incapacitates him from performing the duties of the position which he seeks; that he is a citizen of the United States; that he does

---

he seeks, and accompanied by certificates from three citizens of good repute in the community stating that they know said applicant to be fully competent to perform the duties of the position sought. The word 'veteran,' as used in this act, shall be construed to mean a person who served in the United States army or navy during the war of the rebellion, and was honorably discharged therefrom."

The second section of Rule XII. of the civil service rules is as follows :

" Any veteran desiring, under chapter 437 of the Acts of 1887, appointment to office or employment in the service classified under the Civil Service Rules, without having passed any examination provided for therein, shall file an application for such appointment, stating; on oath: (1) his full name, residence, and post office address; (2) the office he seeks; (3) that he desires appointment without having passed any examination provided for by the Civil Service Act or the rules thereunder; (4) his service in the army or navy of the United States in the time of the war of the rebellion, and discharge therefrom ; (5) that he has not suffered loss of limb, or other physical impairment, which incapacitates; (6) his citizenship ; (7) that he does not habitually use intoxicating beverages to excess, and is not a vendor of intoxicating liquor ; (8) that he has not within one year been convicted of any offence against the laws of this Commonwealth. Such application must be supported by certificates that the applicant has all the qualifications required by law of veterans. Such application, if for an office or employment in the service of the Commonwealth or of the city of Boston, shall be filed in the office of the commissioners in Boston ; if for an office or employment in the service of any city other than Boston, it shall be filed with the local board of examiners in such city."

not habitually use intoxicating beverages to excess, and is not a vendor of intoxicating liquor, and has not been convicted within one year of any offence against the laws of the Commonwealth. Whether they can make these inquiries or not, we are unable to see in the statutes any indication that the Legislature intended that the commissioners should examine a veteran who makes application under St. 1895, c. 501, §§ 2 and 6, with reference to his moral character, or his mental acquirements and capacity to perform the duties of the position which he seeks. If the commissioners were to do this, and were to certify to the appointing officer only such veterans as they found to be of good moral character and mentally as well as physically qualified to perform the duties of the position which they seek, there would be little difference under this statute between the condition of veterans who desire an appointment without having passed any examination, and that of those who submit themselves to an examination. We think the intention of the statute of 1895 is that the sworn statement of the applicant that he is qualified to perform the duties of the position which he seeks, accompanied by a certificate from three citizens of good repute in the community that they know said applicant to be fully competent to perform such duties, is to be taken by the commissioners for the purpose of certification to the appointing power, and by the appointing power as conclusive upon the mental and moral qualifications of the applicant. The certificate of three citizens is not required to be under oath, and it may be made by any three persons of good repute whom the applicant may select; it is not made under any sense of official responsibility, and the persons making it are not required to be impartial or disinterested. They may be the friends or relations or servants of the applicant. The St. 1895, c. 501, § 2, provides "that the age limit now established by the civil service rules, with regard to appointments in the police and prison service and fire departments, may be applied to" appointments under this section; but this seems to be the only clear provision that the commissioners may exclude from certain offices and employments veterans who make the requisite application, accompanied by the requisite statement and certificate, and the exclusion can be made only on account of age, in accordance with the

age limit established by the civil service rules when St. 1895, c. 501, took effect.

It is the contention of the petitioner that the privileges given to veterans by the St. 1895, c. 501, §§ 2 and 6, are in violation of the principles which underlie our system of government implied in the Constitution of the Commonwealth, and also are in violation of certain express provisions of the Constitution. The express provisions relied on are found in articles 6 and 7 of the Declaration of Rights, and reference is also made to article 9. Article 9 is as follows: "All elections ought to be free; and all the inhabitants of this Commonwealth, having such qualifications as they shall establish by their frame of government, have an equal right to elect officers, and to be elected, for public employments." It is not contended that this article in terms is applicable to the present case. It relates to elections and to inhabitants who have such qualifications as are established by the frame of government. The civil service statutes do not relate to elections or to any offices the qualifications for which are established by the Constitution, but the article, so far as it extends, does declare the principle that all persons having the requisite qualifications have an equal right to elect and to be elected to public office.

Article 7 is as follows: "Government is instituted for the common good; for the protection, safety, prosperity, and happiness of the people; and not for the profit, honor, or private interest of any one man, family, or class of men: Therefore, the people alone have an incontestable, unalienable, and indefeasible right to institute government; and to reform, alter, or totally change the same, when their protection, safety, prosperity, and happiness require it."

This article is declarative of the ends of the institution of government. It may be said to be fairly within the intent of this article that public offices, which are the instrumentalities of government, ought not to be created or filled for the profit, honor, or private interest of any one man, family, or class of men, but only for the protection, safety, prosperity, and happiness of the people, and for the common good.

Article 6 is as follows: "No man, nor corporation or association of men, have any other title to obtain advantages, or

particular and exclusive privileges, distinct from those of the community, than what arises from the consideration of services rendered to the public; and this title being in nature neither hereditary, nor transmissible to children, or descendants, or relations by blood, the idea of a man born a magistrate, lawgiver, or judge is absurd and unnatural."

From the conclusion of this article it is manifest that it is mainly directed against hereditary offices and privileges, but it is contended that this is not its whole purpose. It is said that the mention of corporations and associations of men shows that hereditary privileges were not solely intended, because corporations and associations of men have no heirs, although they may be perpetual. We think it obvious that, whatever may be the advantages or particular and exclusive privileges mentioned, they may include advantages and privileges for life or a definite period of time, as well as hereditary advantages and privileges. We think, for example, that a peerage for life, with the privileges which attach to a peerage by English law, cannot be conferred in this Commonwealth upon any person, any more than can an hereditary peerage.

It has been argued, on the one hand, that the words "than what arises from the consideration of services rendered to the public" mean or include services which have been rendered to the public in the past, and that if a man, corporation, or association of men has rendered services to the public in the past, it is consistent with this article that he may obtain advantages, or particular and exclusive privileges, in consideration of those services. On the other hand, it is argued that it is only in consideration of services to be rendered to the public therefor, that a man, corporation, or association of men may obtain advantages, or particular and exclusive privileges. This provision is said to have been taken from the Declaration of Rights in the Constitution of Virginia of 1776, section 4, where it reads as follows: "That no man, or set of men, are entitled to exclusive or separate emoluments or privileges from the community, but in consideration of public services; which, not being descendible, neither ought the offices of magistrate, legislator, or judge to be hereditary."

In our opinion, the meaning of these words in this article, so far

as they are applicable to public offices, is that only in consideration of services to be rendered to the public therefor can a man, corporation, or association of men obtain advantages or particular and exclusive privileges distinct from those of the community. A person may obtain the advantages or privileges attached to a public office in consideration of his performing the duties of the office. It is for the purpose of rendering service to the public in a public office that advantages and privileges distinct from those of the community may be obtained. The meaning of this article was somewhat considered in *Hewitt* v. *Charier*, 16 Pick. 353, and it was held that St. 1818, c. 113, was not in violation of the article. It was there held that the leading purpose of that statute was to guard the public against ignorance, negligence, and carelessness in the practice of physic and surgery, and that the exclusive privileges granted to such persons as shall have been licensed by the officers of the Massachusetts Medical Society, or have been graduated doctors of medicine from Harvard University, were only incidental to the leading purpose of the statute. In that case, as in others where a license is required before any one can engage in certain professions or pursuits, a service is rendered to the public by the exercise on the part of those licensed of the skill, knowledge, and experience required to obtain a license, and by the exclusion of ignorant and incapable persons from the profession or pursuit. But it may be questioned whether this article of the Declaration of Rights was intended to apply to private pursuits and employments, and whether it is not to be confined to political and civil rights and privileges.

The original statute of 1884, c. 320, concerning the civil service, required that the rules should provide " for giving preference in appointments to office and promotions in office (other qualifications being equal) to applicants who served in the army or navy of the United States in time of war and have been honorably discharged therefrom." § 14, cl. 6. It may be said that, other qualifications being equal, there are reasons to believe that a veteran soldier or sailor often will make a better civil officer than a person who never has been subjected to the discipline of service in war, and it is distinctly a public purpose to promote patriotism, and to make conspicuous and honorable any

exhibition of courage, constancy, and devotion to the welfare of the State, shown in the public service. These things, we assume, the Legislature may take into account in providing for appointments to office where the qualifications are not prescribed by the Constitution. The St. of 1887, c. 437, provides that veterans may be preferred for appointment to office or employment in the service of the Commonwealth or the cities thereof, without having passed an examination under the civil service rules. This statute only gives a discretion to the appointing power, which it may or may not exercise, according to the needs of the public service. See also St. 1889, c. 473. St. 1895, c. 501, § 1, amending St. 1884, c. 320, § 14, cl. 6, makes compulsory the certification and appointment of veterans who have been examined and found qualified for the positions they seek, in preference to all other persons, but they must submit to the same examination as other persons. The constitutionality of this section of the statute is not now before us.

The purpose of St. 1895, c. 501, §§ 2 and 6, is to make the appointment of veterans compulsory, 'if they desire to be appointed, whether the appointing power or the commissioners think they are or are not qualified to perform the duties of the office or employment which they seek. Section 6 requires a sworn statement of the applicant that he is qualified to perform the duties of the position he seeks, but it is notorious that persons the least qualified to perform the duties of an office often are the readiest to believe that they are qualified to perform them, and this provision cannot be seriously taken as a reasonable and adequate method of ascertaining the qualifications of applicants for office or employment. Probably it was because the Legislature felt that this requirement was not adequate, that the certificate of three citizens of good repute was also required. But the obvious defect in this requirement is that the applicant may select the three citizens, and they are not required to have any knowledge of the qualifications required, or to be disinterested or impartial, or to act under any sense of public responsibility. A man cannot properly be a judge in his own case, or make his servants and agents the judges. Such a certificate cannot be regarded as a reasonable, impartial, and adequate method of determining the qualifications of applicants for appointment to

office or employment, if it be necessary under the Constitution that all persons appointed to office or employment should be adjudged by somebody to be qualified to perform the duties of the office or employment.

The principal question of law in this case, broadly stated, is therefore as follows: Can the Legislature constitutionally provide that certain public offices and employments which it has created shall be filled by veterans in preferment to all other persons, whether the veterans are or are not found or thought to be actually qualified to perform the duties of the offices and employments by some impartial and competent officer or board charged with some public duty in making the appointments? If such legislation is not constitutional as regards public offices, the question incidentally may arise whether a distinction can be made between public offices and employments by the public which are not offices?

Public offices are created for the purpose of effecting the ends for which government has been instituted, which are the common good, and not the profit, honor, or private interest of any one man, family, or class of men. In our form of government it is fundamental that public offices are a public trust, and that the persons to be appointed should be selected solely with a view to the public welfare. In offices which are created by the Legislature, where the method of appointment is not prescribed by the Constitution, the Legislature, if no limitation is put upon its power by the Constitution, can take upon itself the responsibility of selecting the persons to be appointed, or can confer the power of appointment upon public officers or boards, or upon the inhabitants of cities, towns, or districts; but we think that it is inconsistent with the nature of our government, and particularly with articles 6 and 7 of our Declaration of Rights, that the appointing power should be compelled by legislation to appoint to public offices persons of a certain class in preference to all others, without the exercise on its part of any discretion, and without the favorable judgment of some legally constituted officer or board designated by law to inquire and determine whether the persons to be appointed are actually qualified to perform the duties which pertain to the offices.

There are many employments by the Commonwealth, or by

the cities and towns of the Commonwealth, which do not constitute the employee a public officer. The work of the Commonwealth, and of the cities and towns, must be done by agents or servants, and much of it is of the nature of an employment. It is sometimes difficult to make the distinction between a public office and an employment, yet the title of " public officer " is one well known to the law, and it often is necessary to determine what constitutes a public office. Every copying clerk or janitor of a public building is not necessarily a public officer. With reference to such and similar employments, it may be suggested that, if the Legislature can give pensions to veteran soldiers and sailors, it may grant them on condition that the pensioners shall render such service to the Commonwealth, or to its cities and towns, as they can ; that they may be employed and paid wages or a salary, partly in consideration of the services they render, and partly in recognition of and as a reward for the services which they have rendered to the Commonwealth in the past.

We have not found it necessary, however, in the present case, to consider the authority of the Legislature to grant pensions or pecuniary rewards for past services to the State, whether the pensions and rewards be absolute or conditional upon the rendering of some service, because, in our opinion, the persons appointed to the detective department of the district police force of the Commonwealth, under Pub. Sts. c. 103, and the acts in amendment thereof, are public officers, and not merely employees of the Commonwealth. They are appointed by the Governor for the term of three years, subject to removal by the Governor, and they " have and exercise throughout the Commonwealth all the powers of constables (except the service of civil process), police officers, and watchmen, and may be transferred from one district to another ; and the Governor may at any time command their services in suppressing riots and in preserving the peace." Pub. Sts. c. 103, § 2. They give bonds to the Treasurer of the Commonwealth and receive a stated salary from the treasury of the Commonwealth. They have and exercise some of the powers of government. We are of opinion that §§ 2 and 6 of St. 1895, c. 501, so far as they purport absolutely to give to veterans particular and exclusive privileges distinct from those of the community in obtaining public office, cannot

be upheld as enactments within the constitutional power of the General Court.

The result is, that the commissioners were not authorized by St. 1895, c. 501, §§ 2 and 6, without an examination, to place the name of Edward D. Bean at the head of the list to be certified for appointment upon the detective force of the district police of the Commonwealth in preference to all other applicants not veterans or women; and that they should be commanded to strike his name from the list.

*Mandamus to issue accordingly.*