MICHAEL B. CORCORAN *vs.* COMMONWEALTH.

Suffolk.    October 1, 1956. — November 27, 1956.

Present: WILKINS, C.J., RONAN, SPALDING, WILLIAMS,
& WHITTEMORE, JJ.

*Contempt.   Witness,* Compelling giving of testimony.   *Special Commission.*

An order of the Superior Court sentencing one to imprisonment for one
year for contempt in refusing to answer questions as a witness before
a special commission, and providing further that the sentence should
be vacated and he "stand discharged of the further necessity for con-
finement" if he should purge himself by answering the questions
"during the life of the commission," then due to expire about two weeks
later, otherwise he should "remain confined to serve" the sentence,
purported to deal with a criminal rather than a civil contempt.   [35]

A legislative resolve authorizing the Superior Court, upon application
of a special commission, to "compel . . . the giving of testimony
before said commission" did not provide for compelling the giving of
testimony anywhere else, and did not support an adjudication of
contempt, made at a hearing in the Superior Court on such an applica-
tion, for failure of the respondent to obey an order of the judge that
he then and there answer certain questions which had been put to
him by the commission.   [35]

A contempt of the Superior Court was not shown at a hearing on an
application by a special commission to compel the giving of testimony
where the judge ordered the respondent to answer questions put to
him by the commission "if the commission should reconvene [t]here-
after . . . and . . . [he] should again be brought before it" and in-
quired of him whether he intended to obey such order, and he replied
respectfully that he would "refuse to answer the questions until
ordered to do so by a valid and effective order of the court."   [35–36]

An adjudication that the respondent in *Cabot* v. *Corcoran,* 332 Mass. 44,
was in contempt was error where, following that decision and the
entry of a final decree after rescript accordingly, he was summoned
before the special commission existing under Res. 1954, c. 80, and,
upon being questioned, claimed his constitutional privilege against
self incrimination and was not thereafter ordered by the commission
to answer the questions; a vote of the commission at the outset of
the hearing to grant him immunity from prosecution pursuant to the
resolve was not the equivalent of an order to him to answer the ques-
tions after his claim of privilege.   [37]

PETITION for a writ of error filed in the Supreme Judicial Court for the county of Suffolk on January 11, 1955.

The case was reserved and reported without decision by *Whittemore*, J.

*James W. Kelleher*, (*Robert K. Lamere* with him,) for the petitioner.

*Arnold H. Salisbury*, Assistant Attorney General, (*Daniel J. Finn*, Assistant Attorney General, with him,) for the Commonwealth.

WILKINS, C.J.   The petitioner for writ of error seeks to quash three jail sentences for contempt imposed by a judge of the Superior Court.   The case was reserved and reported without decision by a single justice of the Supreme Judicial Court upon the petition as amended, the answer, the stipulation to material facts, and the return of the Chief Justice of the Superior Court.

The case arises out of occurrences subsequent to the decision in *Cabot* v. *Corcoran*, 332 Mass. 44, decided December 16, 1954, which ordered the entry of a declaratory decree (page 52).   On January 3, 1955, a motion for entry of a final decree was allowed, and a final decree was entered containing the following: "1. The court declares that the respondent was under no obligation to answer the questions put to him by the commission on March 31, 1954, as set forth in the petition and, therefore, denies the relief sought in prayer 1 of the petition.   2. The court declares that if the respondent is again summoned before the commission while it is in existence in consequence of c. 80 of the Resolves of 1954, or under any statutory extension,[1] it will be his duty to answer those and any other questions relating to the subjects which the commission is authorized to investigate, and that *if he claims privilege not to incriminate himself* [italics supplied] he cannot thereafter be prosecuted or subjected to penalty or forfeiture in any tribunal of this

---

[1] The successive statutes empowering the commission are c. 100 of the Resolves of 1953; c. 80 of the Resolves of 1954; c. 9 and c. 147 of the Resolves of 1955; and c. 110 of the Resolves of 1956, which continues the existence of the commission until the last Wednesday of March, 1957.

Commonwealth for or on account of any matter or thing concerning which he may be required to testify or produce evidence or for or on account of any disclosure of the circumstances of any offence, the sources from which, or the means by which evidence of its commission or of his connection with it may be obtained or made effectual for his conviction."[1]

On January 7, 1955, the petitioner was adjudged guilty of what the stipulation describes as "three criminal contempts of court," and on January 10, 1955, was sentenced to be committed to jail for one year for each contempt, the sentences to be served concurrently. The judgments of contempt were made in a hearing upon an application to compel testimony filed by the commission in the Superior Court, Suffolk County, on January 6, 1955. The application was docketed "In re: Michael B. Corcoran, Number 69,262 Eq."

Pursuant to an order of notice returnable January 7, 1955, the petitioner appeared and filed an answer. At a hearing in the Superior Court, evidence was introduced with respect to the appearance of the petitioner before the commission on January 6. A stenographic transcript of the hearing before the commission showed that after the petitioner was sworn and before he was asked questions, the commission voted to grant immunity from prosecution under c. 80 of the Resolves of 1954; that subsequent to the vote the petitioner was asked fifty-eight questions, forty being those set forth in the petition in *Cabot* v. *Corcoran*; and that to each question the petitioner made the following response: "I refuse to answer under art. 12 of the Declaration of Rights of the Massachusetts Constitution and the Fifth and Fourteenth Amendments of the Federal Constitution." After giving the responses the petitioner was not ordered by the commission to answer any questions.

The petitioner, called as a witness in the Superior Court

---

[1] Corcoran appealed from this decree on January 5, 1955, and on the following day the appeal was dismissed by the Superior Court. G. L. (Ter. Ed.) c. 231, § 133. Corcoran then appealed to this court, which affirmed the decree. *Cabot* v. *Corcoran*, 333 Mass. 769.

by counsel for the commission, testified that the transcript of testimony was correct. The judge read and explained to the petitioner the last paragraph of the opinion in *Cabot* v. *Corcoran*, and stated: "I now find as a matter of law, that upon the evidence before me and upon the stipulation that the transcript states properly what took place, and accurately, that upon January 6, 1955, the commission created for the investigation of organized crime and organized gambling within the Commonwealth of Massachusetts summonsed Michael B. Corcoran, the present respondent, and that Michael B. Corcoran there appeared. I find and rule as a matter of law that the commission took action and held its meeting while in existence in consequence of c. 80 of the Resolves of 1954, and I find from the facts and examination of the cases, that these questions relate to the subjects which the commission is authorized to investigate. I find that the respondent has claimed privilege not to incriminate himself and has claimed it under art. 12 of the Declaration of Rights of the Constitution of this Commonwealth, and arts. 5 and 14 of the Constitution of the United States . . . . Mr. Corcoran, I now order you to answer these questions that have been put to you by the commission and which have been read in the proceedings now being conducted, in view of the fact that you have been granted immunity in accordance with the terms set forth in the decree of this court." The petitioner's attorney excepted. Thereafter the judge asked the petitioner whether he would obey the order. The petitioner answered, "With all respect I am unable to state what action I shall take until the order is filed and my counsel has had an opportunity to advise me with respect to whether it is valid and to appeal if he considers it erroneous." The judge then stated, "In view of the explicit terms of the order as given, I shall now adjudge and declare that you are in contempt of this court." In the arguments before us this has been referred to as the second contempt.

The judge then stated, "I now desire to present another series of questions to you, Mr. Corcoran. Do you decline to answer these questions which were put to you yesterday

by the commission, if the commission should reconvene hereafter, that is following this court hearing, and you should again be brought before it?" Following an exception by his counsel the petitioner was directed to answer, and did answer as follows: "With all respect I shall refuse to answer the questions until ordered to do so by valid and effective order of the court." The judge stated, "I now order you to answer these questions and any other questions relating to the subjects which the commission is authorized to investigate. Do you intend to obey the order?" Subject to his exception the petitioner was directed to answer and did answer as follows: "With all respect I shall refuse to answer the questions until ordered to do so by a valid and effective order of the court." The judge then stated subject to the petitioner's exception, "Having ordered you to answer these questions as already have been set forth, I now adjudge and declare that you are in contempt of this court." In the arguments before us this has been referred to as the third contempt.

The judge next stated: "And I further declare and adjudge that the questions put by the commission on January 6, 1955, having been proper for the purposes of the commission, the failure of the respondent after having secured immunity, then and there constituted contempt, and further I adjudge and decree, declare that you, sir, are in contempt." The following then occurred: "COUNSEL FOR THE PETITIONER: Save my exception to this. May I ask in that connection, is Your Honor ruling that Mr. Corcoran committed contempt yesterday? THE JUDGE: I would assume that it may, indeed, be an invocation of nunc pro tunc, but I am satisfied that from what I have heard and the study of the transcript, a contempt was committed, particularly in view of the declaration contained in the decision of the Supreme Judicial Court." In the arguments before us this has been referred to as the first contempt.

On January 10, 1955, the petitioner was sentenced as hereinbefore stated. The judge said in part: "It remains,

however, for me to add in connection with the terms of the commitment order, a further statement, which I will ask be included in the mittimus. In so far as this court has the power, and by this court I have reference to myself as a justice of this court, I now declare that in the event that Corcoran shall comply with the order of this court during the life of the commission, and if the court is satisfied upon such certification by the commission that Corcoran has purged himself of the contempts of which he has [been] adjudged guilty, then his sentence shall be vacated and he shall stand discharged of the further necessity for confinement. In the event, however, that Corcoran does not purge himself of these contempts by answering the questions during the lifetime of the commission, and in the event that the commission shall have terminated its proceedings in accordance with the resolution establishing it through the expiration of its term of office, then it is the intention of this court that he shall remain confined to serve the sentences hitherto imposed upon him. . . . There is but one other thing I desire to have appear in the record. That is the opinion of this court that the contempts which have been committed are criminal contempts."

On January 13, 1955, there was entered as of January 10, 1955, the following "findings of fact and orders for decrees in the matter of contempts of court. In the above entitled cases, after full hearing, held after due notice, I find the defendant Corcoran guilty of three separate contempts of court. 1. For his refusal to comply with the final decree after rescript in Cabot, et als vs. Corcoran, 68141 Eq. 2. For his refusal to comply with the order of this court that he answer certain questions during the hearing on the application to compel testimony (69262 Eq.), and 3. For his refusal to comply with the order of this court that he answer certain questions at a meeting of the special commission to be convened, and I therefore order the defendant committed to the common jail in Suffolk County for separate periods of one year for each contempt, each commitment to be served concurrently."

1. The Commonwealth contends that the first contempt, but not the second and third, is civil, and that as to it writ of error will not lie. See *Hurley* v. *Commonwealth*, 188 Mass. 443, 445; *Blankenburg* v. *Commonwealth*, 260 Mass. 369, 371; *Crystal, petitioner*, 330 Mass. 583, 590. This argument is a departure from the stipulation, as we construe it, and we do not look upon it with favor. See *Loring* v. *Mercier*, 318 Mass. 599. We read in the stipulation that "the petitioner was adjudged guilty of three criminal contempts." We also think that, at the very least, "the punitive feature of the order is dominant and fixes its character for purposes of review." *In re Merchants' Stock & Grain Co.* 223 U. S. 639, 642. *Union Tool Co.* v. *Wilson*, 259 U. S. 107, 110. See *Cherry* v. *Cherry*, 253 Mass. 172, 174; *Godard* v. *Babson-Dow Manuf. Co.* 319 Mass. 345, 347. The petitioner was sentenced to serve one year beginning January 13, 1955, when c. 80 of the Resolves of 1954 was, by its own terms, due to expire on the last Wednesday of that month.

2. The second contempt conviction was for a failure to answer in court questions propounded by the judge. The material portion of c. 80 of the Resolves of 1954 is: "Any justice of the supreme judicial or of the superior court may, upon application of the commission, compel the attendance of witnesses summoned as aforesaid and the giving of testimony before said commission in furtherance of any investigation under this resolve, in the same manner and to the same extent as before said courts." This language does not embrace compelling the giving of testimony anywhere except before the commission. The second contempt conviction cannot stand.

2. The third contempt conviction was based upon the petitioner's "refusal to comply with the order of this [Superior] Court that he answer certain questions at a meeting of the special commission to be convened." This order sounds in futuro and is tantamount to an order to comply before compliance is possible. The conviction cannot be upheld, and is not in accord with *Crystal, petitioner*, 330

Mass. 583, where we said (pages 589–590): "It does not seem to us that a mere statement of intention not to perform, made to the court quietly and respectfully, before there has been an opportunity to perform is in itself contemptuous. . . . Such statement in such circumstances is not in itself a failure to perform. One may perform as soon as performance becomes possible notwithstanding such a statement." It should be noted as to the third contempt that the petitioner never flatly refused to perform. He merely declined to commit himself that he would perform. For what the fact may be worth, there is nothing to show that the petitioner has ever refused to appear before the commission, at any time, past, present, or future. What we say here is wholly apart from any question of the cutting off of the petitioner's right to appeal from the order itself, or from any question of notice and opportunity to defend in the contempt proceeding.

4. We return to the first conviction for contempt, which arose out of the proceedings before the commission at the State House on January 6, 1955.

The final paragraph of *Cabot* v. *Corcoran*, 332 Mass. 44, 52, reads in part: "A final decree is to be entered . . . declaring that if he [Corcoran] is again summoned before the commission . . . it will be his duty to answer . . . questions relating to the subjects which the commission is authorized to investigate, and that *if he claims privilege not to incriminate himself* [italics supplied] he cannot thereafter be prosecuted or subjected to penalty or forfeiture in any tribunal of this Commonwealth for or on account of any matter or thing concerning which he may be required to testify or produce evidence or for or on account of any disclosure of the circumstances of any offence, the sources from which, or the means by which evidence of its commission or of his connection with it may be obtained or made effectual for his conviction." This is substantially the language found in the final decree after rescript hereinbefore quoted.

The course adopted by the petitioner follows exactly what

Corcoran v. Commonwealth.

was said in the quoted paragraph and in the final decree. He was called before the commission and he did claim privilege not to incriminate himself. In the ordinary case, where there is no reliance upon a statute granting immunity, a claim of privilege is clearly essential. As was said in *Ross* v. *Crane*, 291 Mass. 28, 33, in an opinion by Chief Justice Rugg, "The immunity is given in return for the relinquishment of a privilege, but the privilege must be asserted before there can be basis for the immunity. It is given in exchange for what would otherwise be a sufficient excuse for refusing to answer; it cannot operate unless the excuse is set up." In the ordinary case no contempt lies unless the refusal to answer follows an adverse ruling by the tribunal on the claim of privilege and a clear direction thereafter to answer. *Carlson* v. *United States*, 209 Fed. (2d) 209, 214 (C. A. 1). *Traub* v. *United States*, 232 Fed. (2d) 43, 48 (C. A. D. C.). Wigmore on Evidence (3d ed.) § 2282 at pages 508, 511, 518, 520.

An important question is whether there is anything about the present case which dispenses with the usual procedure that after a claim of privilege in response to a question the witness be ordered to answer. The vote of the commission at the outset, in so far as it purported to grant immunity from prosecution under c. 80 of the Resolves of 1954, was supererogatory, because the immunity flowed from the resolve itself, which is in effect a statute. *Cabot* v. *Corcoran*, 332 Mass. 44, 46. The superfluous vote did not take the place of an order to answer given to the petitioner after claiming privilege.[1] In the precise circumstances of this case we feel unable to say that the petitioner, under penalty for criminal contempt, did not have the right to declare that he was invoking his privilege. He was within the express terms of the decree after rescript. Whether the history of his appearances before the commission or of his

---

[1] The Commonwealth states in a footnote in its brief that the actual vote contained the phrase "and that thus he is required to answer the questions put to him." This is not part of the record before us. We make no intimation that it would have been effective.

litigation with the commission be thought to indicate that he was playing for delay is not a material consideration. In cases of alleged contempt scrupulous care to respect the rights of a witness is mandatory. Any real doubt should be resolved in his favor.

5. The three convictions for contempt must be quashed.

*So ordered.*