EDMUND C. SHERIDAN *vs.* ALFRED GARDNER & others.

Suffolk. January 8, 1964. — February 6, 1964.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Massachusetts Crime Commission. Special Commission. Constitutional Law,* Separation of powers, General Court, Bill of attainder, Ex post facto law, Public office, Equal protection of laws, Due process of law. *General Court. Witness,* Compelling giving of testimony. *Contempt. Equity Jurisdiction,* Declaratory relief, Proceeding against Commonwealth. *Statute,* Construction. *Words,* "Organized crime," "Corrupt practices in government."

A suit in equity for declaratory relief by one summoned as a witness before the Massachusetts Crime Commission, created by Res. 1962, c. 146, against the members and counsel of the commission was not against the Commonwealth and was not barred on that ground. [10]

Res. 1962, c. 146, creating the Massachusetts Crime Commission as a special commission to investigate organized crime and corrupt practices in government in Massachusetts and matters having to do with enforcement of the laws relating thereto, and to report to the Legislature the results of the commission's investigation and its recommendations for legislation, is not violative of art. 30 of the Declaration of Rights of the Massachusetts Constitution in that it authorizes the Governor to appoint the members of the commission, to designate its chairman, and to fill vacancies in its membership. [10-13]

The provisions of Res. 1962, c. 146, vesting in designated courts discretionary power to compel the attendance of witnesses and the giving of evidence by them before the Massachusetts Crime Commission created by that resolve do not violate art. 30 of the Declaration of Rights of the Massachusetts Constitution. [13]

The exclusion of anyone convicted of certain offences and any member of his immediate family from eligibility for membership in the Massachusetts Crime Commission created by Res. 1962, c. 146, does not constitute an ex post facto law or bill of attainder within art. 24 or art. 25 of the Declaration of Rights of the Massachusetts Constitution and art. 1, § 10, of the Federal Constitution, nor does it deny equality of opportunity to hold public office or employment in violation of art. 1 of the Declaration of Rights, nor does it deny equal protection of the laws in violation of the Fourteenth Amendment of the Federal Constitution. [13-15]

That the investigation under Res. 1962, c. 146, by the Massachusetts Crime Commission of organized crime and corrupt practices in government in aid of legislation may incidentally develop evidence of individual crimes

which the commission is authorized to submit to law enforcement officers does not constitute a violation of art. 30 of the Declaration of Rights of the Massachusetts Constitution. [15, 16–18]

No violation of § 2, art. 4, and § 3, art. 10, of Part II, c. 1, of the Massachusetts Constitution with respect to corrupt practices in connection with the election of members of the Legislature appears in the powers vested in the Massachusetts Crime Commission by Res. 1962, c. 146, properly construed so as to avoid serious doubts as to its constitutionality. [18–19]

Failure by one to respond to a summons by the Massachusetts Crime Commission under Res. 1962, c. 146, to attend and give evidence before the commission does not in itself constitute the criminal offence of contempt, but merely makes him subject to a court order compelling his attendance and giving of evidence. [19]

The subject matter of a summons issued to one by the Massachusetts Crime Commission under Res. 1962, c. 146, to attend before it and give evidence of what he knew about "corrupt practices in government at state and local levels" in Massachusetts and "in particular" the deposit of specified public funds in a designated bank was not so lacking in definiteness as to deny him due process of law in violation of art. 12 of the Declaration of Rights of the Massachusetts Constitution or the Fourteenth Amendment of the Federal Constitution. [19–20]

BILL IN EQUITY filed in the Superior Court on October 9, 1963.

The suit was reported by *Sullivan,* J.

*Morris M. Goldings, Francis X. McLaughlin & Thomas J. O'Toole* for the plaintiff.

*Harold M. Willcox* (*Marshall Simonds & Donald N. Sweeney* with him) for the defendants.

*Walter Jay Skinner,* Assistant Attorney General, for the Attorney General.

WILKINS, C.J.    This bill for declaratory relief has been reported without decision by a judge of the Superior Court upon the pleadings and a statement of agreed facts amounting to a case stated. Further proceedings have been stayed, and the defendants enjoined from taking further steps to procure the attendance of the plaintiff as a witness, as hereinafter discussed. The prayer for declaratory relief is vague. It asks a binding declaration "of the right, duty, status and other legal relations" of the parties.

Seven defendants are the members of the commission (sometimes called Massachusetts Crime Commission) appointed by the Governor pursuant to Res. 1962, c. 146, and

the remaining two are their counsel. The plaintiff is a resident of Boston upon whom on September 13, 1963, service was made of a paper, in form a summons, by a sergeant of the State police. The summons was directed to the plaintiff at the Department of Public Works to appear before the commission on September 16. It required the plaintiff "to give evidence of what you know relating to the existence and extent of corrupt practices in government at state and local levels in the Commonwealth and in particular to the following: the deposit of funds of the Department of Public Works, the State Treasurer, and the Metropolitan Transit Authority with the . . . [name of bank deleted by order of Superior Court] and you are further required to bring with you all correspondence, memoranda, records, or writings of any sort pertaining to the deposit of funds of the Department of Public Works at the" said bank. On the reverse side of the summons are printed "The Rules of Procedure Governing the Conduct of Hearings Before the Massachusetts Crime Commission."

The plaintiff has never appeared before the commission. He raises numerous questions under the State and Federal Constitutions assailing the validity of the commission and of its summons. The Attorney General has been notified in accordance with G. L. c. 231A, § 8.

1. This is a suit against individual members of a board and their counsel, and is neither in form nor in substance, against the Commonwealth. Most obviously, it is not within the holding of *Executive Air Serv. Inc.* v. *Division of Fisheries & Game,* 342 Mass. 356, where declaratory relief was sought as to land of the Commonwealth, which was a necessary party. See *Demetropolos* v. *Commonwealth,* 342 Mass. 658, 661. See also *Moneyweight Scale Co.* v. *McBride,* 199 Mass. 503, 505–506, *S. C.* (appeal dismissed) 223 U. S. 749; *Commonwealth* v. *Norman,* 249 Mass. 123, 130–131.

2. It is objected that the resolve violates art. 30 of the Declaration of Rights in that it authorizes the executive department to exercise a legislative power in appointing the members. We do not agree. The first paragraph of

the resolve reads: "That an unpaid special commission to consist of seven members appointed by the governor is hereby established to investigate and study as a basis for legislative action the existence and extent of organized crime within the commonwealth and corrupt practices in government at state and local levels, the existence of conditions which tend or may tend to prevent or interfere with the proper enforcement of the laws relating thereto, the existence of physical, legal and policy limitations on the powers and functions of those charged with the duty of enforcement of said laws and the extent to which the power of the government of the commonwealth in relation to the enforcement of said laws may or should be properly exercised at state and local levels."

The power to fill vacancies is in the Governor, who shall from time to time designate one of the members as chairman.

The resolve also provides: "The commission shall report to the general court annually on or before the first Wednesday in December in each year the results of its investigations and study and its recommendations, if any, together with drafts of legislation necessary to carry such recommendations into effect by filing the same with the clerk of the senate and shall file a final report not later than the last Wednesday in June, nineteen hundred and sixty-five. The commission shall also file a copy of each such report with the governor."

In *Attorney Gen.* v. *Brissenden,* 271 Mass. 172, the entrusting of a legislative investigation to a member of the executive department, namely, the Attorney General, was held not to violate art. 30. At page 181, it was said by Chief Justice Rugg, speaking for the court: "The ascertainment of pertinent facts as the basis for legislation is within the power of the law making department of government. When a legislative body has a right to do an act, it must be allowed to select the means within reasonable bounds. It is not precluded from delegating incidental powers which it may exercise itself in aid of its primary functions but which do not partake of the nature of law

making. Authority to obtain information necessary for its determination concerning the exercise of the power to enact laws may be conferred upon nonlegislative bodies . . . . Where facts are necessary as a basis for legislative action, the General Court may ascertain them in any reasonable way. Familiar methods are by appropriating the results of studies already made by itself or by others, by conducting an inquiry through a committee of its members, or by utilizing an existing commission or board to make and report the results of a research.''

The product of the work of the commission would be a reasonable source of information to the Legislature, which still would have the exclusive power to decide what, if any, legislation should be enacted. There is nothing in art. 30 which requires that investigations in aid of possible legislation should be conducted in whole or in part by members of the General Court. Indeed, the right of petition guaranteed by art. 19 of the Declaration of Rights conclusively points to the contrary. See, similarly, the First Amendment of the Constitution of the United States.

It is common knowledge that legislation frequently is proposed by a Governor and by other executive officers of the State. The Acts and Resolves over the years contain hundreds of examples where the Legislature has exercised its powers to conduct investigations, obtain facts, and receive reports through commissions and specified officers and boards. In very many instances the Governor has appointed a majority of the members of a commission. In a large number there have been no legislative members. In others the commissions created, or the boards designated, by the Legislature were empowered to hold hearings and to make report to the Legislature with drafts of recommended legislation. Res. 1947, c. 53. Res. 1949, cc. 28, 34, 46, 48. Res. 1950, cc. 46, 56. Res. 1951, c. 64. Res. 1952, cc. 71, 77. Res. 1961, c. 22. Res. 1962, cc. 86, 120. Res. 1963, c. 144.

Appointment of members of a legislative recess commission by the Governor was approved in *Opinion of the Justices,* 302 Mass. 605, 620. In *Brown* v. *Russell,* 166 Mass. 14, 25, it was said that the Legislature, barring a constitu-

tional limitation on its power, could confer the power of appointment to offices created by it upon public officers or boards. This statement was quoted with approval in *Bradley* v. *Board of Zoning Adjustment of Boston,* 255 Mass. 160, 165.

3. The conferring of the power to summon does not affect the validity of the Legislature's delegation of authority to the commission.[1] In *Attorney Gen.* v. *Brissenden,* 271 Mass. 172, 183-184, it was said, "There are numerous instances, in the actions of the General Court, where power has been vested in courts to compel the attendance and the giving of testimony by witnesses before boards, commissions and other bodies exercising quasi judicial powers or powers of inquiry as to facts. . . . The court is ever solicitous to maintain the sharp division between the three departments of government as declared by art. 30 of the Declaration of Rights. . . . But that bound has not been overstepped by the present resolves. We are of opinion that the question, whether the defendant may be compelled to testify before the plaintiff as to the matters disclosed on this record, is judicial in its nature. The provision of the resolves authorizing this court to compel the defendant to give testimony is a valid exercise of legislative power and confers jurisdiction to act."

There is no merit in the assertion that art. 30 of the Declaration of Rights is violated because a discretion in the courts to refuse an application enables the judiciary to prohibit the Legislature from examining particular witnesses or posing particular questions.

4. The second paragraph of Res. 1962, c. 146, contains

---

[1] In the fourth paragraph of the resolve it is provided: "The commission may require by summons the attendance and testimony under oath of witnesses and the production before it of books and papers relating to any matter being investigated by it pursuant to the provisions of this resolve. Such a summons may be issued by the commission only upon a vote of the commission and shall be served in the same manner as summonses for witnesses in criminal cases issued on behalf of the commonwealth and all provisions of law relative to summonses issued in such cases shall apply to summonses issued under this resolve so far as applicable. Any justice of the supreme judicial court or of the superior court may upon application by the commission compel the attendance of witnesses summoned as aforesaid and the giving of testimony under oath before the commission in furtherance of any investigation under this resolve in the same manner and to the same extent as before said courts."

the following: "No member shall hold any public office except that of justice of the peace or notary public or be a member or employee of any political committee. Not more than four of said members shall at any one time be members of the same political party. No person who has been convicted of a felony, gaming offense or any misdemeanor involving moral turpitude, *nor any member of the immediate family of any such person,* and no person who has served as a member of . . . [a previous crime commission] *shall be eligible for appointment to the commission*" (emphasis supplied).

(a) The plaintiff contends that the italicized words constitute a bill of attainder and an ex post facto law in violation of art. 24 or art. 25 of the Declaration of Rights and of art. 1, § 10, of the Constitution of the United States. "The distinguishing feature of a bill of attainder is the substitution of a legislative for a judicial determination of guilt. . . . The mark of an *ex post facto* law is the imposition of what can fairly be designated punishment for past acts." *De Veau* v. *Braisted,* 363 U. S. 144, 160.

From the italicized words read in context, it is clear that the Legislature was directing its sights at the qualifications of the members with a view to enabling the creation of a commission which would impart an innate idea of independence and integrity and with the purpose to instil a public sense of security and confidence in a body to which was to be confided authority in sensitive areas. See *Brown* v. *Russell,* 166 Mass. 14, 17, 25–26; *Ross* v. *Crane,* 291 Mass. 28, 33. There was plainly no intent to declare guilt or to impose punishment. See *Garner* v. *Board of Pub. Works of Los Angeles,* 341 U. S. 716, 722; *Flemming* v. *Nestor,* 363 U. S. 603, 613–616.

We are equally of opinion that no guilt was declared or punishment imposed. More than one class of persons were barred. It is not contended that holders of public office, members and employees of political committees, and members of former crime commissions could not properly be excluded, nor that the number of members of a political party could not be limited. No suggestion of declaration

of guilt or of punishment for crime can be made as to them. The exclusion of persons convicted of felonies, gaming offences, and misdemeanors involving moral turpitude does not establish an unreasonable qualification for membership. *Hawker* v. *New York,* 170 U. S. 189. *De Veau* v. *Braisted,* 363 U. S. 144, 158–160. There is no contrary contention. The members of the families of persons so convicted, the Legislature might well have felt, could be swayed in the performance of their duties on a crime commission by considerations of sympathy or of family loyalty. Their exclusion from this temporary unpaid body was a reasonable means of achieving a legitimate State aim. See opinion of Mr. Justice Brennan in *De Veau* v. *Braisted, supra,* 161. See also *Ashley* v. *Three Justices of the Superior Court,* 228 Mass. 63, 78, *S. C.* (appeal dismissed sub nom. *Ashley* v. *Wait*) 250 U. S. 652; *Faxon* v. *School Comm. of Boston,* 331 Mass. 531, 535–538.

(b) For similar reasons another contention of the plaintiff fails. The resolve is not invalid as establishing inequality of opportunity to hold public office or employment in violation of art. 1 of the Declaration of Rights and does not deny the equal protection of the laws in contravention of the Fourteenth Amendment of the Constitution of the United States. There are other and fatal objections to the plaintiff's other arguments under the Declaration of Rights. Article 9 expressly applies only to elected officials. *Ashley* v. *Three Justices of the Superior Court,* 228 Mass. 63, 78. Article 6 concerns hereditary titles and offices. Article 7 is so clearly inapposite as to need no discussion.

5. The sixth paragraph of Res. 1962, c. 146, reads, "Upon order of the commission its counsel shall present to a grand jury for its action, or submit to the attorney general, a district attorney or other law enforcement agency, such evidence which has come to the attention of the commission as in the opinion of the commission warrants such presentation or submission."

(a) The plaintiff argues that this provision authorizes the commission by its counsel to go before the grand jury in person, and that this would be in violation of art. 12 of the

Declaration of Rights.  The record in this suit does not show that its counsel has done so or that there has been any such order of the commission.  Until a case presenting this issue comes before us we shall not undertake to evaluate in its context the precise meaning of the word "present." Should we at that time be of opinion that such an appearance is apparently authorized, and should we also be of opinion that such authorization would be contrary to some constitutional provision, it would then become our duty, if possible, so to construe the resolve as to avoid reasonable constitutional doubts.  *Opinion of the Justices,* 330 Mass. 713, 726.  *Commonwealth* v. *Benoit, ante,* 1, 6, and cases cited.  *United States* v. *Rumely,* 345 U. S. 41, 45–47.

(b) The plaintiff also makes the contention that this provision violates art. 30 of the Declaration of Rights, relating to the separation of powers, and the due process clause of the Fourteenth Amendment of the Constitution of the United States because it gives a legislative investigatory commission power to prosecute individuals for crime.

As we have observed earlier in the opinion, point 2, *supra,* the Legislature is empowered to conduct hearings in aid of legislation, and to conduct them itself or in some other reasonable way, of which the commission is an example.  See *McGrain* v. *Daugherty,* 273 U. S. 135, 177–178; *Quinn* v. *United States,* 349 U. S. 155, 160–161; *Hutcheson* v. *United States,* 369 U. S. 599, 616.  But that power is "subject to recognized limitations.  It cannot be used to inquire into private affairs unrelated to a valid legislative purpose. . . .  Similarly, the power to investigate must not be confused with any of the powers of law enforcement; those powers are assigned under our Constitution to the Executive and the Judiciary."  *Quinn* v. *United States, supra.* 161.  "[T]here is no congressional power to expose for the sake of exposure."  *Watkins* v. *United States,* 354 U. S. 178, 200.  Unlike interference with the constitutional right of free speech (see *Sweezy* v. *New Hampshire,* 354 U. S. 234; *Watkins* v. *United States, supra,* 196–197; *Gibson* v. *Florida Legislative Investigation Commn.* 372 U. S. 539,

544), no one has constitutional protection in engaging in organized crime or in corrupt practices in government.

The plaintiff lays great store by *United States* v. *Icardi,* 140 F. Supp. 383 (D. D. C.). That case, which arose out of the questioning of a witness by a subcommittee of Congress, is quite distinguishable from the one at bar. There the subcommittee had been created for the expressed purpose of investigating a single crime (a murder in the armed forces in Italy during the Second World War). The United States District Court judge found in substance that there was no valid legislative purpose, where the subcommittee already knew all the facts behind the questioning.

In the case at bar the resolve on its face serves a legitimate legislative purpose. This purpose is not nullified because some individuals are shown to have committed crimes. *McGrain* v. *Daugherty, supra,* 179–180. *Hutcheson* v. *United States, supra,* 613. *Nelson* v. *Wyman,* 99 N. H. 33, 38. In *Matter of Di Brizzi,* 303 N. Y. 206, 216–217. In the hearing stage at least no witness before the commission could claim to be punished by publicity, as the resolve prescribes that all hearings before it shall be private.[1]

So far as concerns the Fourteenth Amendment, the Supreme Court of the United States "has held that the concept of separation of powers embodied in the United States Constitution is not mandatory in state governments." *Sweezy* v. *New Hampshire,* 354 U. S. 234, 255. *Dreyer* v. *Illinois,* 187 U. S. 71, 83–84. *Carfer* v. *Caldwell,* 200 U. S. 293, 297. That question, however, is clearly open under art. 30 of the Declaration of Rights.

The courts of other States, unanimously so far as we have been able to learn, have held that the doctrine of the separation of powers is not violated. In *Nelson* v. *Wyman,* 99 N. H. 33, 38, it was said, "When the investigation provided for is a general one, the discovery of a specific, individual

---

[1] The fifth clause of the resolve contains such a requirement: "Witnesses shall testify only at private hearings and the same provisions with reference to secrecy which govern proceedings of a grand jury shall govern all proceedings of the commission."

violation of law is collateral and subordinate to the main object of the inquiry. . . . The existence of such a possibility does not change the investigation from a legislative to a criminal one." In *Matter of Di Brizzi,* 303 N. Y. 206, 216, it was said, "The fact that the Attorney-General and the members of the Crime Commission, in determining whether there exists a relationship between organized crime and units of government, may find it necessary to inquire as to whether individual crimes have been committed does not, as petitioner urges, render the investigation unconstitutional as a usurpation of the traditional province of the grand jury in each county of the State. This is a *general* investigation into *organized* crime and its relation to government." See *Washington* v. *Superior Court,* 40 Wash. 2d 502.

In *Eggers* v. *Kenny,* 15 N. J. 107, it was held that an investigating committee of the Board of Commissioners of Jersey City, which was a legislative body, might conduct an inquiry in aid of its proper legislative functions, even though the subject of inquiry might also be the proper concern of the courts and grand juries in their enforcement of the criminal laws. In so doing the court overruled an earlier case holding to the contrary because of its "disastrous effects" (p. 119).

6. The plaintiff asserts that Res. 1962, c. 146, is so broad as to allow the commission, which is not composed of legislators, to inquire into corrupt practices in connection with the election of members to the General Court and, to the extent that it does, is in violation of the Constitution, Part II, c. 1, § 2, art. 4, and Part II, c. 1, § 3, art. 10. He relies upon *Dinan* v. *Swig,* 223 Mass. 516, which concerned the courts. The commission is not a court. *Commonwealth* v. *Benoit, ante,* 1, 5. We do not interpret the resolve as conferring power to adjudge corruption in the election of members to the General Court. It must be construed, as is possible, so as to avoid reasonable constitutional doubts. *Commonwealth* v. *Benoit, supra,* 6. The commission, of course, is not engaged in inquiring into corrupt practices in the election of members of the General Court. See *Ash-*

*ley* v. *Three Justices of the Superior Court,* 228 Mass. 63, 81.

7. Violation of art. 12 of the Declaration of Rights and of the Fourteenth Amendment of the Constitution of the United States is charged by the plaintiff because, it is said, the resolve creates a crime which lacks certainty and definiteness. For this the reason assigned is that the resolve extends the circumstances in which a criminal offence can be found to have been committed, the offence being contempt for failure to answer a summons or failure to testify. Assailed are the stated purposes of the resolve, namely, ''the existence and extent of organized crime within the commonwealth and corrupt practices in government at state and local levels.''

(a) At the outset, we shall put at rest the contention that the resolve creates a new criminal offence. It does not. Failures to respond to a summons or to testify, in and of themselves, are not offences which, without more, make a witness subject to the penalties provided by G. L. (Ter. Ed.) c. 233, §§ 10, 5. Such failures merely make him subject to a court order compelling attendance and the giving of testimony. *Commonwealth* v. *Benoit, ante,* 1, 6.

(b) The plaintiff was not summoned to testify as to ''organized crime,'' although these words are well enough understood to be in the title of numerous articles in legal periodicals.[1] In *Matter of Di Brizzi,* 303 N. Y. 206, there

[1] Hodson, Organized Crime, American Crim. L. Q., Vol. 2, No. 1, p. 5 (published by Section of Criminal Law, American Bar Association, and School of Law, University of Kansas). Lumbard, Local and State Action against Organized Crime, Annals of the American Academy of Political and Social Science, May, 1963, p. 82; Miller, A Federal Viewpoint on Combating Organized Crime, *id.* at 93; Ploscow, New Approaches to the Control of Organized Crime, *id.* at 74; Sellin, Organized Crime: A Business Enterprise, *id.* at 12; Woetzel, An Overflow of Organized Crime: Mores versus Morality, *id.* at 1; Strong, New England: The Refined Yankee in Organized Crime, *id.* at 40; Tyler, An Interdisciplinary Attack on Organized Crime, *id.* at 100. Patterson, Organized Crime, 18 Texas Bar J. 409. Pollner, Attorney General Robert F. Kennedy's Legislative Program to Curb Organized Crime and Racketeering, 28 Brooklyn L. Rev. 37. Johnson, Organized Crime: Challenge to the American Legal System, 53 J. Crim. L., Criminology and Police Science, 399; 54 J. Crim. L., Criminology and Police Science, 1. Keating, Organized Crime — What Can Congress Do about It? 51 J. Crim. L., Criminology and Police Science, 458. Tyler, The Roots of Organized Crime, 8 Crime and Delinquency, 325. Organized Crime and Illicit Traffic in Narcotics, Hearings before the Permanent Subcommittee on Investigations of the Committee on Government Operations, United States Senate, 88th Cong., 1st Sess. (1963).

was a Governor's executive order naming members of "the New York State Crime Commission to investigate and take action concerning the relationship between organized crime and Government" (p. 211). The court was able to discuss the subject without expressing doubt as to the meaning of the words "organized crime" (pp. 214, 215, 216, 217).

The purpose for which the plaintiff was summoned was to give testimony as to "corrupt practices in government." This is an adequately understandable area for legislative investigation and remedial action. While succinct, the words are sufficiently definite to make clear to a witness, if he knows right from wrong, the purpose of the inquiry and to enable proper interrogation of witnesses. Surely, the words are not so vague and uncertain as to permit us to rule that no proper questions material to the subject by any possibility could be framed at a hearing. Equally surely, the words constitute no valid reason for a person, immediately upon service of a summons, to attack the substance of the resolve before he has appeared and has been interrogated at all. When a witness appears at a hearing, he will have a suitable opportunity to challenge the propriety of any question. Should any issue reach the courts, the witness would have the benefit of the principle that "scrupulous care to respect the rights of a witness is mandatory. Any real doubt should be resolved in his favor." *Corcoran v. Commonwealth,* 335 Mass. 29, 38.

The summons served upon the plaintiff, although not so limited, in particular sought evidence as to accounts in a specified bank of a State constitutional officer, of a State department, and a public transportation authority. The import of this part of the summons, at least, could not reasonably be mistaken.

8. We have endeavored to cover all the points raised by the plaintiff even those which, like the prayer for declaratory relief, are in the nature of cryptic suggestions.

The decree of preliminary injunction is to be vacated. A declaratory decree is to be entered in accordance with this opinion.

*So ordered.*