ALFRED GARDNER & others *vs.* MASSACHUSETTS TURNPIKE AUTHORITY & others.

Suffolk. January 8, 1965. — February 25, 1965.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, & SPIEGEL, JJ.

*Massachusetts Crime Commission. Special Commission. Public Officer.*

Res. 1962, c. 146, creating the Massachusetts Crime Commission authorizes a rule of procedure adopted by the commission whereby, after it has voted that a hearing be held on a specified subject matter, any "single member" may conduct the hearing and receive evidence as the representative of and with "the authority of" the commission; G. L. c. 4, § 6, Fifth, does not require that such a hearing be conducted by at least a majority of the seven members of the commission.

PETITION for enforcement of process filed in the Supreme Judicial Court for the county of Suffolk on February 14, 1964.

Following the decision of this Court reported in 347 Mass. 552, and entry of a decree after rescript, a contempt petition and certain other matters were heard by *Spalding,* J.

*J. Joseph Maloney, Jr.,* for the respondent Massachusetts Turnpike Authority.

*Dennis L. Ditelberg* for the respondent Lee J. Schnackenberg.

*Marshall Simonds* (*Donald N. Sweeney* with him) for the petitioners.

WILKINS, C.J. In this petition for attachment for contempt the petitioners are the members of the Massachusetts Crime Commission, so called, established pursuant to Res. 1962, c. 146. The respondents are the Massachusetts Turnpike Authority, established by St. 1952, c. 354, as amended, and one Britton and one Schnackenberg, employees of the Authority, summoned as witnesses by the Commission. In a previous proceeding for the enforcement of process by the Commission against the Authority

and five of its employees, two of whom were Britton and Schnackenberg, our order concluded: "The rescript to the county court shall direct that an order issue requiring the attendance of the five witnesses before the Commission for the purposes stated in the respective summonses and that the respondent Britton bring records and answer questions, all in accordance with this opinion. . . . The county court in its order will therefore retain jurisdiction with leave to the parties, or any agents, representatives, or employees of the Authority who may become parties by intervention, to apply upon motion and short notice for additional relief as occasion may arise." *Gardner* v. *Massachusetts Turnpike Authy.* 347 Mass. 552, 565–566.

Pursuant to the decree Schnackenberg, the Secretary-Treasurer of the Authority, and Britton, the custodian of its minutes, appeared at separate hearings of the Commission on June 15, 1964. Each was accompanied by a lawyer, and counsel for the Authority also was in attendance advising Britton. The hearings were conducted by the one member present, who was the chairman, Alfred Gardner. The Authority, through Britton and its counsel, refused to produce its minutes, and Britton and Schnackenberg refused to answer any questions. The sole ground given for refusal was the absence of a majority of the seven members.

Thereafter a single justice heard (1) motions for further relief by Schnackenberg and the Authority, (2) a petition for attachment for contempt by the Commission, and (3) motions to strike and to dismiss the petition by Britton and the Authority, respectively. All the matters were disposed of by a final decree. The motions and the prayer in the petition that the respondents be adjudged in contempt were denied; the prayer in the petition for further relief was granted; and the decree contained an order which in effect required various respondents to answer specific questions, to testify on enumerated subjects, and to produce specified volumes of the minutes of the Authority. The concluding statement of the decree was "That any single member of the commission may conduct a hearing and

when so doing may represent and have the authority of the commission in the reception of evidence and the conduct of the hearing.'' The respondents Schnackenberg and the Authority appealed from the final decree.

The Commission was established with powers of the broadest character: ''That an unpaid special commission to consist of seven members appointed by the governor is hereby established to investigate and study as a basis for legislative action the existence and extent of organized crime within the commonwealth and corrupt practices in government at state and local levels, the existence of conditions which tend or may tend to prevent or interfere with the proper enforcement of the laws relating thereto, the existence of physical, legal and policy limitations on the powers and functions of those charged with the duty of enforcement of said laws and the extent to which the power of the government of the commonwealth in relation to the enforcement of said laws may or should be properly exercised at state and local levels.'' Res. 1962, c. 146, first paragraph. *Sheridan* v. *Gardner,* 347 Mass. 8, 11, appeal dismissed, per cur. 379 U. S. 647.

The Commission relies upon Rule 1 of its Rules of Procedure, which reads in part: ''Hearings shall be held as authorized by vote of the Commission. The vote authorizing a hearing shall identify the subject matter to be investigated at such hearing. Any single member of the Commission may conduct a hearing and when so doing shall represent and have the authority of the Commission in the reception of evidence and the conduct of the hearing.''

Authorization for the adoption of the rule is grounded upon that part of the fifth paragraph of Res. 1962, c. 146, which reads, ''The commission shall establish rules of procedure governing the conduct of its hearings which shall be made available in printed form to each witness prior to his testimony.'' The present rules were established by vote of the Commission.

Beyond question, the Legislature has power to provide that a single member of a board or commission may con-

duct hearings.  *Attorney Gen.* v. *Brissenden,* 271 Mass. 172, 180–181.  Indeed, it has often done so, and so has Congress.  The immediate issue is whether this has been done by implication in Res. 1962, c. 146.  This is purely a question of interpretation of our own State legislation.  Cases from other jurisdictions dealing with other statutes are without relevance.  In *Gardner* v. *Massachusetts Turnpike Authy.* 347 Mass. 552, 556, 559–563, it was held that the hearings are conducted in pursuance of a valid legislative function.

The respondents bank heavily upon that part of G. L. (Ter. Ed.) c. 4, § 6, which reads: ''In construing statutes the following rules shall be observed, unless their observance would involve a construction inconsistent with the manifest intent of the lawmaking body or repugnant to the context of the same statute: . . .  Fifth, Words purporting to give a joint authority to, or to direct any act by, three or more public officers or other persons shall be construed as giving such authority to, or directing such act by, a majority of such officers or persons.''

The character and scope of the work intended to be performed by the Commission cry out eloquently against the restriction upon the taking of testimony which the respondents seek to impose.  The asserted limitation would be completely ''inconsistent with the manifest intent of the law-making body.''  From the outset the magnitude of the task which would confront the Commission was entirely clear.  There had been an earlier crime commission created by Res. 1953, c. 100,[1] which served as a model for Res. 1962, c. 146.  *Commonwealth* v. *Benoit,* 347 Mass. 1, 6–7.  The intricacies of the duties of the earlier commission were evident from its reports.  See 1956 Senate Doc. No. 714; 1957 Senate Doc. No. 511, p. 3.[2]  The experience of the present

---

[1] This resolve was revived or continued in effect by Res. 1954, c. 80; Res. 1955, c. 9 and c. 147.  See Res. 1956, c. 110.

[2] This report submitted on October 10, 1956, contained the following: ''The Commission has held over 70 meetings, summoned approximately 212 witnesses, held 218 formal hearings, and heard many persons by informal hearings and interviews, since January 16, 1956.''

Commission has been confirmatory.[3]

The Commission's area of investigation is the entire Commonwealth. Members are unpaid, and cannot reasonably be expected to serve a substantial part of their working hours. Should at least four members be required to be present throughout the interrogation of each witness, obviously all necessary ground could not be covered. The Commission's time for action is not the indefinite future. Its final report must be filed with the Senate not later than the last Wednesday in June of the current year. Res. 1962, c. 146, seventh paragraph.

No greater risks to private interests would arise because four or more members are not obliged to be present at the taking of testimony. Witnesses must be served by the process usual in criminal cases and can only be summoned after a *vote* of the Commission. They have the right to be represented by counsel at the hearings, which must be private. All proceedings are made subject to the same secrecy as those of a grand jury. A witness before this Commission would be no worse off for testifying before one member. He would not be subject to being publicly or privately pilloried by a single member who lacks the power of self-restraint or spurns its exercise. His testimony would be read, and appraised when later read by the other members in order to form a judgment as to what, if any, action to take. There will always be a fundamental safeguard if a witness does not attend or records are not produced, or if he or his counsel objects to any question. In such event, only upon application by the Commission can compliance

---

[3] The Commission's second report, filed on May 22, 1963, states: "Since its appointment in October 1962 the Commission has interviewed many people with special knowledge bearing on corruption in government. At private hearings the Commission has received evidence on fifty-three days at which ninety-five witnesses have testified" (pp. 2–3). "The first hearing was held on January 16, 1963, but it was not until February 5, 1963 that hearings were held regularly. . . . Present are one or more members of the Commission . . ." (p. 5). 1963 Senate Doc. No. 865.

The Commission's third report, filed on December 2, 1963, states, "One hundred forty private hearings have been held by the Commission since the filing of the Commission's Second Report on May 22, 1963."

be compelled, and then only by order of a justice of the Supreme Judicial Court or of the Superior Court. Res. 1962, c. 146, fourth and fifth paragraphs. *Commonwealth* v. *Benoit,* 347 Mass. 1, 6. *Sheridan* v. *Gardner,* 347 Mass. 8, 19.

The Legislature intended to expedite the work of the Commission by enjoining the requirement of coöperation upon all agencies of State and local governments. Res. 1962, c. 146, third paragraph. While we have held that such coöperation cannot be enforced in the courts, *Gardner* v. *Callahan,* 347 Mass. 21, the provision is presently an aid in interpretation. It makes manifest the legislative policy that the work of the Commission should proceed in an efficient manner and without obstruction. *Gardner* v. *Massachusetts Turnpike Authy.* 347 Mass. 552, 562. With this policy the respondents obviously are not in accord.

A significant feature in the history of Res. 1962, c. 146, confirms this result. An earlier crime commission reported that ''a temporary rule has been adopted to the effect that a subcommittee of one may conduct a hearing if a witness does not object, but if a witness objects to a one-man subcommittee, then in such case, a two-man subcommittee shall be sufficient to hear a witness.'' 1956 Senate Doc. No. 640, p. 3. This commission, later in reporting that a revision of the rules had been necessary, stated: ''At times the fairness of the Commission's rules impeded its activity when persons took advantage of them. The only substantial change made in the rules during its existence was the amendment to the rule which prohibited a one-man subcommittee to conduct a private hearing if a witness objected. This was abandoned only after several occasions when witnesses insisted that two members be present to hear them give their name and address, and thereafter refuse further answers on the ground that the Commission and all of its activities (including its rules of procedure) were unconstitutional.'' 1957 Senate Doc. No. 700, p. 342. The Legislature, it is reasonable to suppose, had in mind the earlier commission and the powers re-

ported as exercised by it under resolves containing substantially similar language to that in Res. 1962, c. 146.

One minor argument of the respondents requires but brief discussion. They contend that the Legislature intended to create a bipartisan body, because no more than four members can be members of the same political party and none can be a member or an employee of a political committee. See Res. 1962, c. 146, second paragraph. From this they deduce that one member cannot hold a bipartisan hearing. This assertion lacks validity. Even if the presence of four members were required, all nevertheless could be members of one political party.

We see no occasion to consider questions of res judicata or waiver by the respondents.

*Decree affirmed.*