Commissioner of Revenue *vs.* Edward Boback & others.[1]

Suffolk.   January 13, 1981. — November 17, 1981.

Present: Armstrong, Rose, & Greaney, JJ.

*Taxation*, Sales and use tax.   *Subpoena.*

Under G. L. c. 62C, § 70, the Commissioner of Revenue had the authority to compel the production of records by certain corporations in the business of supplying prepared food products to independent canteen truck operators in order to ascertain the meals and sales tax liabilities of the canteen truck operators.   [606-610]

Subpoenas issued by the Commissioner of Revenue requiring the keepers of the records of certain corporations to produce all records pertaining to the corporations' liabilities under the State meals excise tax, the State sales tax on meals, and the State sales tax were not drafted with enough specificity to warrant judicial enforcement.   [610-611]

Civil actions commenced in the Superior Court Department on December 4, 1979.

The cases were heard by *Nolan, J.*

*William J. Rooney, Jr. (Arthur J. McCabe, II,* with him) for the defendants.

*James A. Aloisi, Jr.,* Assistant Attorney General, for the plaintiff.

Armstrong, J.   Acting pursuant to G. L. c. 62C, § 70, the Commissioner of Revenue (commissioner) applied to the Superior Court for orders compelling the defendants, keepers of the records of three corporations, to comply with subpoenas issued by the commissioner which required the defendants to appear and produce records "pertaining to [their respective corporations' liabilities under the] Massachusetts [m]eals [e]xcise [t]ax, [the] Massachusetts [s]ales

---

[1] Warren Lawson and Jitendra Seth.

[t]ax on [m]eals, [and the] Massachusetts [s]ales [t]ax."[2]
The applications were supported by unsworn "affidavits" of
the commissioner and a deputy commissioner suggesting
that the department was relying, in part, on its authority to
verify the corporate excise returns of the corporations. The
defendants filed counter affidavits which, according to the
characterization put on them by the defendants, suggested
that the commissioner's real purpose was to harass their cor-
porations and coerce them into collecting at the wholesale
level sales taxes which the department was having difficulty
collecting from the retailers who purchase the corporations'
products.

It seems to be agreed that the underlying facts are as
follows.[3] The corporations, known as "industrial commis-

---

[2] The three subpoenas were identical in form, which was: "In the mat-
ter of the tax liability of [name and address of corporation], period(s)
November 19, 1975 through and including October, 1979. [The keeper
of records is] summoned to appear at the Department of Revenue . . .
before [name of officers, time and date] to testify in the above matter and
to bring with you: Any and all, but not limited to, files, workpapers,
sales journals, ledgers, sales checks, expense and capital invoices, check
registers, bank statements, federal corporate income tax returns, Massa-
chusetts corporate excise returns; and any other records or documents per-
taining to Massachusetts Meals Excise Tax, Massachusetts Sales Tax on
Meals, Massachusetts Sales Tax, Massachusetts Use Tax, for the above-
referenced matter." The syntax is not altogether clear; but in order to
avoid insuperable problems of overbreadth, we read the "pertaining to
. . ." phrase as controlling or defining all classes of records called for by
the subpoenas. The alternative seems to be to read the subpoenas as call-
ing for all classes of records of any description, without limitation.

[3] The facts stated do not appear either in the applications or the so called
affidavits filed by the commissioner, nor do they appear in the findings by
the judge who heard the application for enforcement in the motion session.
Some of the facts appear in the defendants' counteraffidavits. More appear
in the complaint filed in a case, *DiStefano* v. *Commissioner of Rev.*,
Superior Court, Suffolk County, Civil No. 38802 (1979), brought by the
defendants and others to enjoin the commissioner from pressing her sub-
poenas and from examining their records. In that action the present de-
fendants sought a preliminary injunction, which was heard at the same
time as the commissioner's applications for enforcement. The judge al-
lowed the applications and denied the preliminary injunction, and the de-
fendants filed notices of appeal. The record was not assembled in the de-
fendants' action, for what reason we have been unable to ascertain, and

saries," are engaged in the business of supplying prepared food products to independent canteen truck operators. The canteen operators retail the products at factories, construction projects, and the like, presumably during coffee breaks and lunch hours. Such retail sales were subject to the meals tax prior to 1978 and, since January 1, 1978, have been subject to the five percent sales tax.[4] Many of the canteen truck operators, however, have failed to register as "vendors" under G. L. c. 64H, § 7, and fail to make returns to the Department of Revenue, as required by G. L. c. 62C, § 16(h). The identities of the canteen operators appear to be largely unknown to the department, and an underlying source of disagreement between the commissaries and the department concerns the authority of the department to force the commissaries to disclose their customer lists. The parties, however, approach that issue only obliquely, the commissaries because they are intent on characterizing the department's purpose more invidiously, as pressuring them (the commissaries) to collect a tax for which they are not

---

as a result the only appeals before us are those from the enforcement orders in the proceedings brought by the commissioner. Nevertheless, the defendants have included in the appendix a lengthy brief filed with the motion judge in the *DiStefano* action, and no objection has been made thereto. To some extent the factual bareness of the record before us has been supplemented from statements in the parties' briefs, the *DiStefano* brief and record, and statements of counsel in argument. The facts stated in the opinion are, we think we are safe in saying, undisputed.

[4] The meals tax, G. L. c. 64B, was repealed by St. 1977, c. 363A, § 43. Section 46 of the same act incorporated the provisions of the former meals tax into the sales tax law, G. L. c. 64H, as an exception to § 6(h). Section 6(h) generally exempts food products from the provisions of the five percent sales tax. The result is that "food products" are exempt unless they are "meals," which are defined, in relevant part, as any food or beverage prepared for human consumption and provided by a "restau- rant." Section 6(h) defines "restaurant," in relevant part, as "any eating establishment where food, food products, or beverages are provided and for which a charge is made, including but not limited to, a cafe, lunch counter, private or social club, cocktail lounge, hotel dining room, catering business, tavern, diner, snack bar, dining room, vending machine, and any other place or establishment where food or beverages are provided, whether stationary or mobile, temporary or permanent."

responsible, and the commissioner because she seems intent on justifying the demands of her subpoena under her power to examine the books and records of taxpayers for the purpose of verifying their returns. See G. L. c. 63, § 69; c. 62C, § 25.

The commissaries, with immaterial exceptions,[5] are not registered as vendors for purposes of the sales tax and do not file sales tax returns. The obligation to make sales tax returns falls on retail vendors, not on wholesalers. G. L. c. 64H, § 2. The department relies, however, on G. L. c. 64H, § 8(*a*), inserted by St. 1967, c. 757, § 1, which creates a presumption "that all gross receipts of a vendor from the sale of tangible personal property are from sales subject to tax until the contrary is established. The burden of proving that a sale of tangible personal property by any vendor is not a sale at retail shall be upon such vendor unless he takes from the purchaser a certificate to the effect that the property is purchased for resale."

The word "vendor" is defined broadly enough to include wholesalers as well as retailers,[6] but there is strength in the commissaries' contention that the presumption is nevertheless inapplicable to their sales of food products to canteen truck operators. The commissaries differ from wholesalers generally because food products are, as a general rule, exempt from sales tax. G. L. c. 64H, § 6(*h*). A sale of food is taxable only if the food is a "meal," and food is not a meal unless it is sold by a "restaurant." See note 4, *supra*. While the definition of "restaurant" is not free from difficulty, the crux appears to be in the concept of "eating establishment." The department makes no contention that the commissaries

[5] Mr. Snack, Inc., not only supplies food products to canteen truck operators but also holds a victualer's license and runs a snack bar. The record leaves unclear whether its snack bar operation is registered and makes returns. Joseph's Industrial Caterers, Inc., is also a lessor of motor vehicles and is registered as a vendor under the sales tax for that purpose.

[6] General Laws c. 64H, § 1(18), inserted by St. 1967, c. 757, § 1, states: "'Vendor,' a retailer or other person selling tangible personal property of a kind the gross receipts from the retail sale of which are [subject to the sales tax]."

are eating establishments, and the facts apparently agreed upon by the parties indicate the contrary. In view of the absence of a showing by the department that the commissaries may be liable for sales taxes on food products, and the fact that the subpoenas apparently do not include within their scope any records relating to the commissaries' liability for corporate excises or other taxes (see the text of the subpoenas, *supra* at note 2), the commissaries urge that the subpoenas should not be enforced.

Apart from questions of vagueness and overbreadth, which we leave for later consideration, we are persuaded that the commissaries' position has two serious weaknesses. The first is narrow and technical but nonetheless important. The record indicates that the commissaries sell not only food products but also napkins and other paper products to the canteen truck operators. The sales of paper products are not subject to the food products exemption and thus are presumptively sales at retail.[7] The commissaries are thus presumptively required to file sales tax returns, and the commissioner is entitled to inspect their records relative to such sales under G. L. c. 62C, § 25. The paper products may be a relatively insignificant component of the commissaries' sales to canteen truck operators, but, unless the paper products are invoiced separately from food products, the records of those sales could give the commissioner the greater part of the information she seeks. In any event they would presumably reveal the identities of the canteen truck operators.

The second, and more far-reaching, problem with the commissaries' position is that it assumes that the commissioner is limited to requiring the production of records bear-

---

[7] The record is silent on the subject, but the defendants' brief appears to concede that the sales of some of the paper products are retail sales within the meaning of the sales tax law. A "retail sale" is "a sale of tangible personal property for any purpose other than resale in the regular course of business." G. L. c. 64H, § 1(13), inserted by St. 1967, c. 757, § 1. Paper cups and bags are exempt by virtue of § 6(*q*)(1), but such items as napkins, straws, and stirrers do not seem to be exempted. Compare *Clark Franklin Press Corp.* v. *State Tax Commn.*, 364 Mass. 598 (1974).

ing on the tax liabilities of the commissaries themselves. General Laws c. 62C, § 70, under which the commissioner is acting, is not so limited. Section 70, inserted by St. 1976, c. 415, § 22, authorizes the commissioner to "take testimony and proofs under oath *with reference to any matter within the official purview of the department* . . ., and in connection therewith [to] issue summonses and require the attendance and testimony of witnesses and the production of books, papers, records, and other data" (emphasis supplied). There is no suggestion in that language that the commissioner may examine a witness only with respect to the witness's own tax liability. There is no particular reason for adopting a restrictive construction, the statute not being penal in nature. See *Application of a Grand Jury of N.Y.*, 8 Mass. App. Ct. 760, 765-768 (1979). The established approach is quite the opposite: i.e., to give an interpretation to the subpoena power of a taxing authority which will most usefully further the objects for which the power was given. See *DeMasters* v. *Arend*, 313 F.2d 79 (9th Cir.), petition for cert. dismissed, 375 U.S. 936 (1963); *United States* v. *McKay*, 372 F.2d 174 (5th Cir. 1967); *United States* v. *Joyce*, 498 F.2d 592, 594 (7th Cir. 1974); *United States* v. *Continental Bank & Trust Co.*, 503 F.2d 45, 50 (10th Cir. 1974); *United States* v. *Bremicker*, 365 F. Supp. 701, 702-703 (D. Minn. 1973). No doubt has been expressed as to the scope of the corresponding Federal statute, § 7602(2) of the Internal Revenue Code. That statute, like § 70, does not explicitly state that third parties may be subpoenaed; but the cases applying it and its predecessors have regularly upheld the authority of the Internal Revenue Service to compel the production of third-party records. See *Brownson* v. *United States*, 32 F.2d 844, 846-849 (8th Cir. 1929); *Falsone* v. *United States*, 205 F.2d 734 (5th Cir.), cert. denied, 346 U.S. 864 (1953); *Venn* v. *United States*, 400 F.2d 207 (5th Cir. 1968); *In Re Commr. of Int. Rev.*, 216 F. Supp. 90 (E.D. Mich. 1963); *United States* v. *Bremicker*, *supra*. See also *Donaldson* v. *United States*,

400 U.S. 517 (1971).[8]  Construing a subpoena-authorizing statute as general as § 70, Oregon's Supreme Court has held that the Oregon State Tax Commission could require production of the records of lumber processors concerning their purchases from loggers in order to determine the liabilities of the latter to pay a forest products severance tax. *Pope & Talbot, Inc.* v. *State Tax Commn.*, 216 Or. 605 (1959). *Frank Lumber Co.* v. *Department of Rev.*, 287 Or. 513 (1979).  Those cases are indistinguishable in principle from the one before us.

The claim is made here, as it was in the Oregon cases, that the subpoenas amount to a "fishing expedition", because they are not directed towards the tax liability of a particular named person or persons as to whom probable cause could be ascertained, but are instead directed at discovering sales transactions in hopes of uncovering possible tax liabilities of persons unknown.  But the commissioner's investigation does not share one essential quality of the classically frowned-upon fishing expedition:  the speculative quality, the remoteness of the possibility of turning up a fish. Here, it is acknowledged that there is a large and well-defined school of fish swimming in the very place where the commissioner proposes to drop her net.  Their names are not known, but their existence is clear, as is their liability under the sales tax law.  The records held by the defendants are the obvious place for the commissioner to go to ascertain not only the names of the canteen truck operators but also substantial evidence of the volume of business done by each. Nor does the propriety of the subpoenas turn on a showing that large numbers of canteen truck operators fail to remit sales taxes to the Commonwealth, a proposition which appears to be undisputed in any event.  Rather, the subpoena is proper if its purpose is "to determine whether those obli-

---

[8] Since the decision in the *Donaldson* case, Congress has amended the Internal Revenue Code by inserting a provision (§ 7609) requiring that when a subpoena is issued against a record-keeper, the taxpayer whose tax liability is in question must be given notice.  See *United States* v. *New York Tel. Co.*, 644 F.2d 953, 956-957 (2d Cir. 1981).

gated to pay taxes are doing so. . . . The fact that the records may . . . relate to non-taxpayers will not render the subpoena invalid if there is a reasonable probability that the records called for contain information concerning taxpayers obligated to comply with the act." *Pope & Talbot, Inc.* v. *State Tax. Commn.*, 216 Or. at 617-618.

What has been said thus far makes it unnecessary to discuss in detail many of the defendants' contentions. Those bearing on the lack of an evidentiary showing by the department that the commissaries are obligated to make sales tax returns are rendered superfluous by our holding that the department may compel production of the commissaries' sales records to determine the sales tax liabilities of the canteen truck operators. Those bearing on the department's good faith — that is, its alleged subterfuge in cloaking an investigation of the tax liabilities of the canteen truck operators in the garb of an investigation of the commissaries' liabilities — are of no moment for the same reason.[9] The showing required by *United States* v. *Powell*, 379 U.S. 48, 57 (1964), "that the investigation will be conducted pursuant to a legitimate purpose, [and] that the inquiry may be relevant to that purpose," has obviously been met once it is

---

[9] The suggestion in the Boback affidavit that the department's purpose is to force the commissaries to become collection agents for the sales tax is likely only a characterization of the department's position, advanced in good faith although rejected here, that the sales by the commissaries to the canteen truck operators are presumptively subject to sales tax under G. L. c. 64H, § 8. If the affidavit goes further, suggesting that the department is harassing the commissaries by excessive subpoena demands for the purpose of forcing them to undertake collection responsibilities for which they are not legally obligated, the judge could decline to believe the affidavit (*Coonce* v. *Coonce*, 356 Mass. 690, 692 [1970]; contrast *Farley* v. *Sprague*, 374 Mass. 419, 423-425 [1978]) and rely instead on the presumption of official regularity. The defendants agreed to have the commissioner's petition for enforcement heard in motion session, and there has been no showing that they offered or were prepared to adduce testimony at that hearing on this or any other subject. They may not now complain that they were denied such an opportunity. *Mede* v. *Colbert*, 342 Mass. 166, 167 (1961). *Darling* v. *Pinkham*, 9 Mass. App. Ct. 885, 886 (1980).

established that it is legitimate for the commissioner to demand the commissaries' records to establish the liabilities of the canteen truck operators.

Having upheld the authority of the commissioner to compel the production of the sales records which are apparently the core of what she seeks, we come to the question of the vagueness or overbreadth of the subpoena as written. To be enforceable, a subpoena must describe the documents sought "with 'reasonable particularity' so as to give the witness sufficient information to determine which records are to be produced." *United States* v. *Malnik*, 489 F.2d 682, 686 n.4 (5th Cir.), cert. denied, 419 U.S. 826 (1974). *Gardner* v. *Massachusetts Turnpike Authy.*, 347 Mass. 552, 561 (1964). The subpoenas in this case fall short of the requisite standard of reasonable specificity. We concluded earlier that the records called for by the subpoena were those pertaining to sales and meals tax liability. Even that conclusion required a process of construction and is by no means certain. The commissioner's brief, in one section, states that the subpoenas were intended to reach all records bearing on all the commissaries' tax liabilities, including corporate excise taxes and withholding taxes. See *United States* v. *Dauphin Deposit Trust Co.*, 385 F.2d 129, 131 (3d Cir. 1967), cert. denied, 390 U.S. 921 (1968). In other sections the brief suggests that the principal purposes are simply to reach the records of sales to the canteen truck vendors. There is no justification for wording the subpoenas with such pervasive uncertainty.

In addition, we think it is bad practice to word a subpoena in terms that call for a legal conclusion, as do the subpoenas here in seeking all records pertaining to sales and meals tax liabilities. We are not prepared to say that such a form of wording would make a subpoena unenforceable in all instances. See *Oklahoma Press Publishing Co.* v. *Walling*, 327 U.S. 186, 209 (1946). Where, however, the purpose to be served could clearly be accomplished by a more specifically drafted subpoena, vagueness to the degree exhibited here violates the requirement of reasonable specific-

ity. And, taking into consideration that the principal focus of the commissioner's inquiry appears to be the meals and sales tax liabilities of the canteen truck operators, we note that there is some authority for applying the specificity requirement with greater stringency where the records sought are those of a third party rather than the person whose tax liability is the object of the investigation. *United States* v. *Berkowitz*, 355 F.Supp. 897, 901 (E.D. Pa.), aff'd, 488 F.2d 1235 (3d Cir. 1973), cert. denied, 421 U.S. 946 (1975).

We conclude that the subpoenas as written should not be enforced, not because of doubt as to the authority of the commissioner to require the production of the classes of records she apparently seeks, but because the subpoenas are not drafted with reasonable specificity.[10] Accordingly, the orders are reversed, and the case is remanded to the Superior Court for further proceedings consistent with this opinion, which may include, in the discretion of the judge, either the entry of judgments denying enforcement to the subpoenas as written or the giving of leave, on motion of the commissioner, to prepare new subpoenas which comply with the requirement of greater specificity set forth herein.

*So ordered.*

---

[10] As the subpoenas cannot be enforced in their present form, we need not rule on the defendants' contention that it was improper for the subpoenas to call for production of the defendants' copies of their Massachusetts corporate excise returns. *United States* v. *Powell*, 379 U.S. at 57-58, listed as one of the conditions of enforceability of subpoenas issued under the Internal Revenue Code that they not call for records already in the possession of the subpoenaing authority. *United States* v. *Goldman*, 453 F. Supp. 508, 512 (C.D. Cal. 1978), aff'd, 637 F.2d 664 (9th Cir. 1980), held that a taxpayer's copies of filed returns fall within the *Powell* proscription. As the necessity of reaching the point will turn on the wording of any new subpoenas the commissioner may prepare, we make no ruling on the question at this stage.