COMMISSIONER OF REVENUE *vs.* ROBERT W. JONES.

No. 88-P-1152.

Suffolk. November 14, 1989. - March 7, 1990.

Present: WARNER, C.J., PERRETTA, & FINE, JJ.

*Taxation*, Meals tax: exemption. *Words*, "Restaurant."

The Appellate Tax Board erred as a matter of law in deciding that a cer-
tain retail fresh and frozen fish market's take-out sales of fried fish and
french fries accompanied by condiments, eating utensils, and paper
towels were not "meals" provided by a "restaurant" subject to sales tax
under the provisions of G. L. c. 64H, § 6(*h*). [335-337]

APPEAL from a decision of the Appellate Tax Board.

*Judith Fabricant*, Assistant Attorney General, for the
Commissioner of Revenue.

*Stephen M. Politi* for the taxpayer.

WARNER, C.J. This is an appeal by the Commissioner of
Revenue (commissioner) from a decision of the Appellate
Tax Board (board) granting an abatement of sales taxes as-
sessed against the taxpayer on sales of prepared food during
the period from January, 1978, through August, 1983. See
G. L. c. 58A, § 13.

The taxpayer owns and operates a fish market under the
name of Greer's Seafood (Greer's). Greer's sells fresh and
frozen fish at retail and wholesale. In the tax years in ques-
tion and for many prior years, Greer's also offered on a take-
out basis cooked to order foods including clams, scallops,
shrimp and french fries.[1] These were sold in different sized
containers. In addition, fried fish and french fries were sold
in combination on a grease-absorbing tray as "fish and
chips." Plastic forks and paper towels, as well as packets of

---

[1]The market had no eating facilities.

salt, ketchup and tartar sauce were provided. There was also a soda vending machine.[2]

The commissioner determined that Greer's sales of fried foods constituted taxable "meals" provided by a "restaurant," as those terms are defined by the applicable taxing statutes.[3] On appeal, the board ruled that Greer's was not a restaurant and did not serve meals and, accordingly, ordered abated the taxes, interest and penalties which Greer's had paid.[4] The record before us includes the transcript of the hearing before the board and its findings of fact and report and opinion. See G. L. c. 58A, § 13. Our review of the board's decision is limited to questions of law. See *Towle* v. *Commissioner of Rev.*, 397 Mass. 599, 601 (1986). While we are bound by the board's findings of fact, see G. L. c. 58A, § 13, we may "consider whether, as a matter of law, the board's factual findings are supported by substantial evidence" (citations omitted). *Towle* v. *Commissioner of Rev.*, *supra* at 602.

The rules governing the taxation of sales of food products for human consumption are set out in G. L. c. 64H, § 6(*h*). Such products are generally exempt from the sales tax. See *Commissioner of Rev.* v. *Boback*, 12 Mass. App. Ct. 602, 605 (1981). Excepted from the exemption, however, are

[2]Greer's conceded its liability for sales taxes assessed on vending machine beverage sales. See *Seiler Corp.* v. *Commissioner of Rev.*, 384 Mass. 635 (1981).

[3]Prior to January 1, 1978, the meals tax appeared in the former G. L. c. 64B. Statute 1977, c. 363A, §§ 43, 45 and 46, amended the statutory scheme by repealing c. 64B and incorporating the meals tax into the general sales tax provisions of c. 64H. The applicable statute for the disputed assessments from January, 1976, to December, 1977, is G. L. c. 64B; for those pertaining to the period from January, 1978, to August, 1983, it is G. L. c. 64H, § 6(*h*). There is, however, no substantive difference between the pertinent provisions of c. 64H, § 6(*h*), and the prior provisions of c. 64B, §§ 1 and 2B, as amended by St. 1975, c. 720, §§ 1 & 2. For ease of reference, we refer hereafter only to G. L. c. 64H, § 6(*h*).

[4]Greer's did not contest the commissioner's computations of tax, interest and penalties.

"meals"[5] provided by a "restaurant." See G. L. c. 64H, § 6(*h*), as appearing in St. 1977, c. 363A, § 46. "A sale of food is taxable only if the food is a 'meal,' and food is not a meal unless it is sold by a 'restaurant.' " *Commissioner of Rev.* v. *Boback, supra.* The taxpayer's liability in this case turns on whether Greer's cooked food operation falls within the statutory definition of a "restaurant."

The general definition of a restaurant, appearing in the third paragraph of section 6(*h*), is inclusive:

"Restaurant shall mean any eating establishment where food, food products, or beverages are provided and for which a charge is made, including, but not limited to, a cafe, lunch counter, private or social club, cocktail lounge, hotel dining room, vending machine, and any other place or establishment where food or beverages are provided, whether stationary or mobile, temporary or permanent."

The definition is, however, circumscribed by specific exemptions which are relevant here and are set out in the margin.[6]

Exempted from the definition of a restaurant are delicatessen, grocery, market and bakery stores. This exemption embraces the general principle that food products are not sub-

---

[5]"Meals" are broadly defined in the second paragraph of section 6(*h*) to include: "any food or beverage, or both, prepared for human consumption and provided by a restaurant, where the food or beverages is intended for consumption on or off the restaurant premises, and includes food or beverages sold on a 'take out' or 'to go' basis, whether or not they are packaged or wrapped and whether or not they are taken from the premises of the restaurant."

[6]The exemptions appear in the third subparagraph of § 6(*h*) and provide: "[1] [d]elicatessen, grocery, market or bakery stores shall not be considered eating establishments within the meaning of this chapter [2] except for any part of such a store which engages, in the sale of dinners, luncheons, barbecued chicken, other than barbecued chicken sold whole and unsliced, sandwiches, snacks, pizzas, and other similar items which are commonly sold at snack bars, coffee shops or luncheon counters; [3] provided further, that such stores shall not be deemed to be restaurants under this chapter based solely on the preparation and sale of prepared meat, poultry and fish items if such sales constitute less than a major portion of the total sales of such stores."

ject to the sales tax. The exception to these exemptions, however, ensures that business competitors will be treated similarly with respect to sales tax liability. To the extent that delicatessens, groceries, markets or bakeries compete with restaurants, their sales are taxable as meals. The third subparagraph of § 6(*h*), provides: "[A]ny part of a . . . store which [sells] dinners, luncheons . . . snacks . . . [or] other [food] commonly sold at snack bars, coffee shops or luncheon counters" is to be considered a restaurant for purposes of applying the sales tax. See, e.g., *Seiler Corporation* v. *Commissioner of Rev.*, 384 Mass. 635, 639-640 (1981) (vending machine sales reasonably taxed as meals provided by a restaurant because they compete with restaurants); *Commissioner of Rev.* v. *Pat's Super Market, Inc.*, 387 Mass. 309, 310 (1982) (sandwiches sold by supermarket are taxable as meals). See also *Ralph's Wonder, Inc.* v. *Commissioner of Rev.*, 19 Mass. App. Ct. 928, 929 (1984).

The commissioner argues persuasively that Greer's market's take-out counter operated as a "restaurant" within the exception to the first exemption. Its sale of fish and chips, cooked to order and accompanied by condiments, is similar to those made at restaurants, lunch counters and snack bars. Greer's likewise competes in the separate sales of fried shrimp, scallops, clams and french fries.[7]

The taxpayer's principal contention is that Greer's take-out operation falls under the second statutory exemption, which provides: "[Markets] . . . shall not be deemed to be restaurants under this chapter based solely on the preparation and sale of prepared meat, poultry and fish items if such sales constitute less than a major portion of the total sales of such stores." The board found as facts that Greer's take-out sales were "limited to prepared fish items" and comprised

---

[7]The taxpayer urges that without coleslaw or beans to round out Greer's offerings, its sales were not "classic" New England dinners, but he does not otherwise challenge the commissioner's characterization of the take-out counter as a restaurant under the exception.

less than a major portion of total sales.[8] Accordingly, the board ruled that Greer's sales were exempt from taxation.

The commissioner argues first that the board's finding that Greer's sales were limited to prepared fish items is unsupported by the evidence. He correctly points to the undisputed evidence that Greer's also sold french fries separately and in combination with fried fish. Next, he contends that the statutory exemption applies only where a market would be deemed to be a restaurant "based solely" on the preparation and sale of fish items. The board rejected this approach, stating that it did "not think that the addition of french fries to the prepared fish sales, to ensure the sale of otherwise discardable fresh fish as fish and chips, and the mere addition of several varieties of seasoning, can bring a fish market into the statutory definition of restaurant." The Legislature must be thought to have used the words "based solely on the preparation and sale of meat, poultry and fish items" advisedly. The commissioner construes the wording of the statute literally, according to its plain and common meaning. This construction furthers the legislative intent to treat business competitors similarly under the statute, see, e.g., *Seiler Corporation* v. *Commissioner of Rev.*, 384 Mass. at 639-640. It also provides a bright line test for enforcing the statute. Interpreting the exemption according to its literal meaning ensures that stores will not fall within the definition of a restaurant unless they actually function so as to compete with restaurants, lunch counters and snack bars. The sale of prepared foods for immediate consumption, whether on or off the premises, provides such competition. The exemption reflects the Legislature's determination, however, that a store's sale of prepared meat, poultry or fish items, without more and subject to the major portion of sales limitation, would

---

[8]In the latter respect, the board relied on the commisioner's administrative rulings defining major portion of total sales as fifteen percent or more. In view of our dispositon, we do not reach the propriety of that determination.

not result in significant competition.[9] While the board and the taxpayer may be correct in their conclusion that the addition of fries and condiments is necessary to the successful marketing of fried fish, it is precisely these additions which made Greer's take-out sales competitive with similar offerings of restaurants, etc., and take them out of the "based solely" exemption.

A further difficulty with the board's approach is that it muddies what is otherwise a clearly expressed statutory test for application. Although in this case the board concluded that the addition of french fries, condiments, utensils and paper towels to a market's sale of fried seafood would not bring it within the definition of a restaurant, what further or different degree of deviation from the statute would be permissible before a store would become subject to tax? Adhering strictly to the express limitation set out in the statute provides for clear application and consistent results.

We hold as matter of law that the board incorrectly decided that Greer's take-out sales were not meals provided by a restaurant and thus not subject to the sales tax.[10] Accordingly, the decision of the board is reversed.

*So ordered.*

---

[9] In his brief on appeal, the defendant says: "We can suppose that a store might offer nothing but fried fish, or shrimp or scallops to the public, but we cannot imagine many customers for these items."

[10] We do not consider the taxpayer's estoppel argument. It was not fairly raised in the petition to the board, see G. L. c. 58A, § 7, and was not considered by the board in its decision. See G. L. c. 58A, § 13.